BROWN *v*. WRIGHT.

Opinion delivered June 10, 1893.

1. *Rights of married women—Presumption as to law of Texas.*

In the absence of proof of the laws of Texas as to the rights of married women, the common law rule that money delivered by a married woman to her husband for investment becomes his property will not be presumed to be in force in that State, since the jurisprudence of Texas was not derived from the common law; in such case the rights of the parties will be determined

according to the law of the forum, and the husband held a trustee for the wife's benefit.

2. *Estoppel—Wife's land in husband's name.*

That a wife permitted the legal title of land of which she was equitable owner to remain in her husband's name for two years will not estop her from claiming its proceeds where it is not shown when she ascertained that the conveyance had been made to him, and no act on her part indicated a willingness to have it treated as his property; especially as to creditors of her husband who knew that the land was her property.

3. *Husband's fraud—Ratification by wife.*

Where a husband made fraudulent representations in the sale of land which stood in his name but equitably belonged to his wife, having been purchased with her means, her acceptance of the purchase money without knowledge of the fraud is not a ratification of it.

Appeal from Arkansas Chancery Court.

JAMES F. ROBINSON, Chancellor.

J. H. and J. A. Brown brought suit against Wm. Wright and Annie, his wife. The complaint alleges that on April 30, 1887, William Wright owned certain property in Tyler, Texas, known as Wright's hotel; that he fraudulently represented to plaintiffs that his title was unincumbered, and thereby induced plaintiffs to buy it from him at its full value, $2500, paid in cash; that he and his wife, Annie, thereafter removed from Texas to Pine Bluff, Arkansas, and invested the money received of plaintiffs in a hotel at Pine Bluff, and took the title in the name of defendant, Annie; that the Pine Bluff property was afterwards sold, and the money re-invested in a hotel at Stuttgart and other real estate in Arkansas county, and the title of the last mentioned real estate was also taken in her name and is now held and claimed by her as her own; that, about a year after plaintiffs had purchased and paid for the hotel in Tyler, they discovered for the first time that this hotel property, as defendants well knew when they sold to plaintiffs, was incumbered by a mortgage which defend-

ants had joined in making to one Mrs. Loftin on April 19, 1886, to secure a debt of $1000 payable two years after date and bearing twelve per cent. interest from maturity, the existence of which mortgage defendants intentionally concealed from plaintiffs; that, the mortgagee having advertised the property for sale under the mortgage, the plaintiffs, to save their title, were compelled to pay, and did pay, the full amount of the incumbrance; that both defendants are insolvent, and have no property except that sought to be reached in this action; and that the object of defendants in procuring the title to this property to be taken in the name of defendant, Annie, was to defeat plaintiffs' claim. Prayer was for judgment for the amount expended by plaintiffs to remove the incumbrance, that the lands mentioned be subjected to plaintiffs' claim, and for general relief.

The answer of both the husband and wife sets up that when the hotel at Tyler was bought, $1200 of the price was paid with her money, and that the remainder was afterwards paid by her with money which she made by keeping boarders, and that the husband, though holding the legal title, was really a trustee for her. They deny that either of them made any false representations about the lien, but say that plaintiffs bought subject to this, as it was on the public records. The answer also sets up a homestead right in the property sought to be subjected to plaintiffs' claim.

Assuming the answer to contain a counter-claim, the plaintiffs filed a reply denying the averments of the answer. This reply also contained an affirmative allegation that defendants made plaintiffs a warranty deed to the hotel at Tyler. This reply seems to have treated as an amendment to the complaint, and defendants filed an answer to it, denying that defendant, Annie, made a warranty deed.

J. H. Brown, one of the plaintiffs, testified: "I am sixty-three years old, am a cotton broker at Tyler, was formerly a merchant and knew defendants at Tyler many years. They kept a hotel there, and I sold them railroad and family supplies. John A. Brown and I bought their hotel at Tyler, called the Wright hotel, and paid them $2500 in cash therefor, its full value. Before buying I questioned William Wright, one of the defendants, closely about the title, and he said there was not a dollar's incumbrance on it. His wife said the same thing. They told me the same thing when they delivered the deed. We have offered to sell the property for $2500. Some months after buying the property we found there was a $1000 mortgage on it, given to Mrs. Loftin by Wright and wife, and we paid this in self protection and had it transferred to us. We got a warranty deed signed by both defendants. I herewith exhibit it. He had purchased this land from J. P. Baird. Wright was poor, and had no other property, I think, unless it was a little place near Tyler which was not paid for."

John A. Brown, the other plaintiff, testified substantially the same as J. H. Brown.

William Wright testified: "My wife owned forty-seven acres of land near Tyler. She sold it and invested the money in the property known as Wright's hotel at Tyler. The deed to that was taken in my name, but was paid for with her money obtained from the sale of her land. When this hotel was sold, the money was invested in a hotel bought at Pine Bluff from D. L. Ringler, and the deed taken to my wife, as it was her money. When the Ringler property was sold, the proceeds were invested in land in Arkansas county, which was exchanged for the property now in suit. I did not make the statement to Ringler which he testified to in his deposition. When I sold the hotel to plaintiffs, I was

not insolvent; I afterwards sold a piece of land for $1200."

Annie Wright testified: "My husband and I went to Tyler about eleven years ago. I bought forty-seven acres of land in my own name and with my own money. When I sold this I gave the money to my husband to buy the lots in Tyler (afterwards known as the Wright hotel), and without my knowledge he took the deed in his own name. I did not know for some time that he had done this, and when I discovered it I was very much dissatisfied. My husband worked in the railroad shops; I was a boarding house keeper, and bought the lots in Tyler to build a boarding house, which I kept for one year and managed myself. I refused to sign the deed to Brown until he gave the check for the price to me and in my name. When the Wright hotel was sold I invested the proceeds in a hotel at Pine Bluff, bought from D. L. Ringler, and when the latter was sold I invested the proceeds in land in Arkansas county, which I exchanged for the land in suit. I did not know my husband was insolvent."

By stipulation of counsel it was agreed that defendants would each deny that they had ever made any statement to anybody, to the effect that the Wright hotel at Tyler was unincumbered, and this denial was to be taken as if deposed to in a deposition.

Upon this testimony the chancellor found in favor of the wife and dismissed the complaint as to her, but rendered judgment against the husband for $1000 and interest.

Plaintiffs have appealed.

*W. S. McCain* and *T. J. Ormsby* for appellant.

1. Where a vendor falsely represents that his title is perfect when he knows it is incumbered, he is liable for deceit. If he gives an express covenant of

warranty, the vendee has the option to sue for deceit or on the broken warranty.    15 Ark. 114 ; 4 *id.* 467 ; 11 *id.* 58 ; 40 *id.* 422.    The reply should be treated as an amendment to the complaint, and thus state a count upon the covenant.    The proof sustains both counts.

2.    The proof shows that the property bought was bought with the husband's money.    50 Ark. 237 ; 30 *id.* 124 ; 37 *id.* 22 ; 42 *id.* 503.    Under the common law the money became the husband's.    68 Ill. 119 ; 50 Ind. 288 ; 41 Tex. 422 and cases *supra.*    See also 42 Ark. 503. What the law of Texas is, in the absence of proof, is difficult of solution.    52 Ark. 385 ; 51 *id.* 459.    This case is similar to 50 Ark. 42.    See also 30 Ark. 79.    The trust seems to be an afterthought to defeat creditors. 48 Ark. 169 ; 34 *id.* 467.

3.    By enjoying the benefits of her husband's fraud, she must be held to have ratified his acts.    Mechem on Ag. sec. 743, note 1 ; 28 Ark. 59 ; 54 *id.* 220 ; 29 *id.* 131; 111 U. S. 395 ; 12 Wall, 360 ; Story, Agency, sec. 139 and notes.    An action of deceit lies against one who keeps money after he knows it was obtained by deceit. 1 Wharton, Cont. 267–70 ; Tiedeman on Sales, sec. 173. If defendants obtained money by fraud and invested it in other property, equity will follow it up as long as it can be traced.    51 Ark. 351.

MANSFIELD, J.    1.    It is suggested by counsel for the appellants that the complaint was treated in the court below as if it were so amended as to claim damages for a breach of the covenants contained in the deed. But we find nothing in the record to warrant us in supposing that the chancellor so regarded the complaint or in holding that he might properly have done so.    We must therefore consider it as stating only the facts embraced in its original form as presented by the transcript.    As found there, it states no cause of action arising out of any contract with Mrs. Wright, or result-

1. Presumption as to laws of Texas.

ing from any tort committed by her, either in person or by an authorized agent; and the only relief it seeks against her is to have the land she holds in Arkansas subjected to the satisfaction of the judgment prayed for against her husband. That relief is sought on the ground that the land was purchased with the husband's money, and that the deed was taken in the wife's name to defeat the collection of the plaintiffs' claim.

The Arkansas property was purchased with the money received on the sale of the Texas hotel; and the latter was paid for with money belonging to Mrs. Wright and delivered to her husband for the purpose of making the purchase. She testifies that the deed was taken in his name without her knowledge or consent, and on this point there is no contradiction of her testimony. It also appears, from the undisputed facts of the case, that she refused to execute a deed on the sale to the plaintiffs except upon the condition that the purchase money should be paid directly to her, and that it was only by a compliance with such condition that the conveyance from her was obtained.

But it is argued that when the wife's money passed into the possession of the husband, prior to his purchase of the hotel, it became his, and that he was therefore the equitable, as well as legal, owner of the property purchased with it. Whether, under the laws of Texas, the money ceased to be the separate property of Mrs. Wright when thus delivered to her husband for investment, we cannot decide, for the reason that what the law of that State is has not been proved.

It is insisted that the money became the property of the husband by the rule of the common law. But as the jurisprudence of Texas was not founded upon or derived from the common law, we cannot presume that that law is in force there. *Thorn* v. *Weatherly*, 50 Ark. 237; *Garner* v. *Wright*, 52 Ark. 385.

With no proof before him as to the law of Texas, the chancellor could not determine the right to the Tyler hotel otherwise than according to our own laws (*Garner* v. *Wright*, 52 Ark. *supra*). Under these the mere possession of the wife's money by the husband would not have converted it into his property; and he would have held the hotel purchased with it as a trustee for her benefit. Mansfield's Digest, sec. 4637; *Kline* v. *Ragland*, 47 Ark. 115; *Hoffman* v. *McFadden*, 56 Ark. 217.

2. But it is further insisted that the appellee permitted the title to the hotel to remain in the name of her husband for such length of time as to bar her equitable right to it as against his creditors. It appears to have been held in his name for about two years; but it is not shown when she ascertained that the conveyance had been made to him, and the evidence discloses no act on her part indicating a willingness to have it treated as his property. Moreover the plaintiffs were distinctly informed of her claim before their purchase was completed, and they recognized it by paying her the purchase money. She is not then, as against them, estopped to assert that her husband held in trust for her; and as they must have understood that she received the money for her separate use, its investment in her name in the lands purchased in this State was not in fraud of their rights.

3. This disposes of the only question raised by the pleadings. For, as before stated, the action is not upon the covenant embraced in the deed nor for the breach of any other contract, but is for deceit, and that is not charged against the appellee. The covenant was not expressly against incumbrances, and if the plaintiffs had sued for its breach, we cannot know but that Mrs. Wright might have shown that, under the laws of Texas, she was not liable upon it. But it is very earnestly con-

*[margin note: 2. When wife not estopped to claim property in husband's name.]*

*[margin note: 3. Ratification by wife of husband's fraud.]*

tended that Mrs. Wright ratified the false representation of her husband by accepting its benefit, and that on the proof a personal judgment should have been rendered against her for the sum she obtained as the fruits of his fraud. Conceding that the deceit alleged against William Wright was not so purely a tort,* that it was necessary to show that it was actionable by the law of Texas, in order to maintain a suit for it here,† and that, notwithstanding the nature of the complaint, it was proper for the chancellor to consider any evidence tending to show that Mrs. Wright participated in or ratified the wrongful act of her husband, we do not think the facts warranted relief against her on either of these grounds. A preponderance of the evidence does not, in our judgment, show that when she received the purchase money for the hotel she knew that a false representation had been made to effect its sale; and without such knowledge her acceptance of the money was not a ratification of the fraud. Mechem on Agency, secs. 113, 148; *Lyon* v. *Tams*, 11 Ark. 205. As to the declarations attributed to her by the disputed testimony of the plaintiffs, with reference to the incumbrance of the hotel, we are not satisfied that they were relied upon, or were such that the plaintiffs had a right to rely upon them, under the circumstances detailed in the statement of the case. *Yeates* v. *Pryor*, 11 Ark. 58; *Matlock* v. *Reppy*, 47 Ark. 148; 2 Bish. Mar. Wom. secs. 257, 258.

Our conclusion therefore is that, on the case made by the pleadings and the proofs adduced, the complaint, in so far as it is against Mrs. Wright, was properly dismissed.

Affirmed.

---

* See *Coon* v. *Atwell*, 46 N. H. 510.

† See *Carter* v. *Goad*, 50 Ark. 155 and authorities there cited.

NOTE—There is a note to the above case in 21 L. R. A. 467, on the presumption as to the law of other states. (Rep.)