H. B. SANBORN, Respondent, v. FIRST NATIONAL BANK of Buchanan County, Appellant.

Kansas City Court of Appeals, December 4, 1905.

PRINCIPAL AND AGENT: Loans: Bills and Notes: Ratification: Knowledge: Money. One H, president of a Kansas bank, made loans to Kansas stockmen on notes and chattel mortgages in the name of the defendant bank, believing he could negotiate them to the bank. This he did, indorsing the notes so as to make himself jointly liable with the maker. When due defendant transmitted them to H's bank for collection, with instructions not to hold for the convenience of parties but protest and return immediately if not paid. H foreclosed the mortgage, seizing and selling plaintiff's cattle. *Held*: (1) H was not the agent of the defendant in making the loan nor in the foreclosure of the mortgages. (2) Nor did the defendant bank upon receipt of the money—proceeds of the foreclosure—and retaining the same, ratify H's act so as to make him its agent. (3) Nor did the subsequent knowledge of the defendant that the money was the proceeds of the foreclosure of plaintiff's cattle have the effect to make the retention of the money a ratification of H's conduct. (4) Money is current and may be received in payment by creditors from their debtors though stolen, if the former are without notice when the money is received and the claim discharged. [Bank v. Lumber Company, 54 Mo. App. 327, 60 Mo. App. 255, overruled.]

Appeal from Buchanan Circuit Court.—*Hon. Archelaus M. Woodson*, Judge.

REVERSED.

*Ben J. Woodson* and *C. F. Strop* for appellant.

(1) Under all the testimony the court should have declared the law to be that there was no evidence that Hopper was the agent of defendant and the court should have directed a verdict for the defendant. (2) Even though Hopper was agent of defendant, yet from the whole case it is clear that he was acting to protect himself on account of his indorsement and not with the intention of serving his principal. The rule of law is that where the agent is in a position where his own interest is in conflict with that of his principal, he will be held in law to have acted for himself and not for his principal. And upon following these authorities, judgment should have been for the defendant: Hickman v. Green, 123 Mo. 176; Bohart v. O'Berne, 13 Pac. 389; Thatcher v. Pray, 113 Mass. 291; Gosnell v. Webster, 97 N. W. 160; Bank v. Lovitt, 114 Mo. 525; Smith v. Farrell, 66 Mo. 8.

*Brown & Dolman* and *John D. Milliken* for respondent.

(1) That Mr. Hopper was the agent of the appellant is shown not only by all the testimony, but the circumstances conclusively show that he was such agent. However, whether he was such agent in the first instance becomes wholly immaterial in view of the subsequent ratification of his conduct, and the retention of the proceeds realized by Mr. Hopper's wrongful act: By retaining the money realized from cattle covered by respondent's mortgage appellant ratified and made every act of Mr. Hopper its own. Not only by so doing does Mr. Hopper's act become that of appellant, but by contesting this case and insisting upon a retention of the benefits of Mr. Hopper's act it justifies and approves the same. Even though Hopper was agent of defendant, yet from the whole case it is clear that he was acting to protect himself on account of his indorsement and not with the intention of serving his principal. The rule of law is

that "where the agent is in a position where his own interest is in conflict with that of his principal, he will be held in law to have acted for himself and not for his principal." (2) Mr. Hopper's interests were not in conflict with the bank's interests, but they were identical. Both desired the payment of Mr. Purcell's notes, both were interested in getting it from Mr. Purcell or his property. The court could not say as a matter of law that Mr. Hopper acted for himself and not for the bank, and the surrounding circumstances all show that everything Mr. Hopper did was for the bank.

ELLISON, J.—This is an action for the conversion of a lot of cattle. The judgment in the trial court was for the plaintiff. Both parties to the controversy claim the cattle through chattel mortgages executed by one Purcell, residing in the State of Kansas, each of the mortgages given for borrowed money . Plaintiff charges that defendant, through one Hopper, whom plaintiff contends was defendant's agent, took cattle included in his mortgage and not included in defendant's; and that if defendant did not authorize Hopper to take the cattle and sell them, it ratified his act in so doing by retaining the money arising out of the sale after knowledge of Hopper's acts.

It appears that in Ness City, western Kansas, there is a bank known as Citizens' State Bank of Ness City and that Hopper is president and one Engel is cashier of such bank. The evidence shows that this bank made loans, and negotiated them to other parties or institutions, among others to the defendant bank at St. Joseph, Missouri. So far as concerns this controversy, there were two loans made to Purcell, the notes and mortgages for which found their way into defendant's possession and ownership. These loans, and others in which defendant became interested, were made by the bank at Ness City, through Hopper or Engel, or Hopper and Engel, as its chief officers. Hopper and Engel

Sanborn v. First Nat. Bank.

would then indorse the notes as individuals, and then the bank would send them to defendant, receiving credit on defendant's books of deposit. That was the way with the notes in controversy. These notes (as well as some others) were taken in the name of the defendant bank for the reason, as stated in evidence, that they did not want such business to appear in the bank's statements and the bank felt confident that defendant would accept them. The profit or interest these three parties had in the loans was this: the notes drew over seven per cent, generally ten. Defendant wanted and got seven per cent interest on the notes it purchased. Hopper and Engel, as consideration for their indorsement, took the difference between the per cent the defendant bank got and what the notes actually drew; and the bank at Ness City, as expressed by one or more of the witnesses, got the business, that is, it got exchange on moneys sent out by draft and it generally had the benefit of the loan as a deposit, sometimes for several months before it would be entirely checked out. When the notes became due, defendant inclosed one of them and the mortgages to the bank at Ness City in the following letter of instruction, and the other in a like letter:

"St. Joseph, Mo., Oct. 23, 1900.
"Citizens State Bank, Ness City, Kas.

"Dear Sir: Enclosed please find for collection and credit, items as stated below.

"Yours truly,
"J. W. McALISTER, Cashier."

PLEASE REPORT BY NUMBER.

| Our No. | Amount. |
| --- | --- |
| 11372 | $ 370.00 |
| 11070 | 2,000.00 |
| 10989 | 350.00 |
| 11016 ... (note in controversy) ... | 1,800.00 |

"Do not hold collections for convenience of parties but protest and return immediately if not paid, unless otherwise instructed."

Hopper took possession of the cattle described in the mortgages, but in addition, he took cattle described in plaintiff's mortgage which were not in defendant's. He foreclosed the mortgages by selling the cattle. He stated that the money was paid to the bank at Ness City and by that bank credit on its books was given to the defendant for the amount received.

Hopper was called for plaintiff and was one of the chief witnesses in the case. In his examination, some confusion necessarily arose in distinguishing what action he took on his individual account, by reason of his being individually liable on the notes, and what he took for the bank, as its president. But the evidence makes it certain that he was not defendant's agent in making the loans, and so the trial court instructed; nor were the loans made for the defendant, though they were made with a view of being negotiated to it if they suited it. As before intimated, they were afterwards negotiated to defendant. The evidence also shows that defendant never authorized the foreclosure of the mortgages on its account. It did not know the mortgages had been foreclosed. Defendant had the notes so signed by Hopper and Engle as to make them, for all practical purposes, jointly liable with Purcell. It did not have to look to the mortgages. It had the right to go upon Hopper and Engle without concerning itself about an expensive and troublesome foreclosure. Why would defendant take it upon itself to seize a lot of cattle, care for and sell them, several hundred miles from its place of residence, when it had two persons in the immediate vicinity personally liable, who were interested in enforcing the mortgages for their own protection? Not only the oral evidence showed that defendant did not authorize Hopper to seize the cattle, but the letters of inclosure of the notes and mortgages, as above set out, exclude any such authority. Those letters addressed to the Citizens State Bank make no intimation of foreclosure of mortgages. They direct that the collections be not held,

but, if not paid, to protest and *return to defendant immediately unless otherwise instructed.* The trial court should not only have instructed, as it did, that there was nothing to show that Hopper was defendant's agent in making the loans and taking the mortgages, but it should also have instructed that there was likewise no substantial evidence tending to show that he was defendant's agent to foreclose them.

But plaintiff contends that conceding there was no evidence of agency to foreclose the mortgages; yet, when defendant received the proceeds of the foreclosure, that is to say, the proceeds of the sale of cattle, which properly belonged to the plaintiff, it thereby ratified Hopper's acts and he became an agent by ratification; and that, even though defendant may not have know at the time it received the money that there had been a foreclosure, yet, when it afterwards learned there had, and still retained the money, it amounted to a ratification. We are of the opinion that the law as to ratification of an unauthorized act done in behalf of another has no application to the facts of the case. Since Hopper was the actor in the transaction, we will confine our remarks to him without joining Engel. Hopper owed the defendant the notes. We make the concession in plaintiff's favor, for sake of argument, that Hopper, individually, as distinguished from the Citizens State Bank, collected the money by foreclosing the mortgage and turning the proceeds over to defendant. Yet he owed the defendant the notes and, notwithstanding he may have wrongfully taken plaintiff's cattle, upon which to raise the money to discharge his obligation to defendant, if the latter received the money in discharge of the debt without notice of the wrong, it cannot be held to have ratified the act, or be made to respond to the wronged party by reason of retaining the proceeds after learning of the manner in which they were obtained. Money is current and may be received in payment by creditors from their debtors, though the latter

may have stolen it, if the former are without notice of the theft when they receive it and discharge their claim. "This doctrine goes upon the ground that money has no earmark; that, in general, it cannot be identified as chattels may be, and that to permit in every case of the payment of a debt an inquiry as to the source from which the debtor derived the money, and a recovery if shown to have been dishonestly acquired, would disorganize all business operations and entail an amount of risk and uncertainty which no enterprise could bear. The rule is founded upon a sound general policy as well as that principle of justice which determines as between innocent parties upon whom the loss should fall under the existing circumstances. [Hatch v. Bank, 147 N. Y. 184.] "Money shall never be followed in the hands of a person, who bona fide, took it in the course of currency and in the way of business." [Miller v. Race, 4 Burrows 452.] "The law wisely, from considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests the title in the holder as to third persons dealing with him, and receiving it in due course of business and in good faith upon a valid consideration." And, "if the consideration is good between the parties, it is good as to all the world." [Stephens v. Board, 79 N. Y. 183.] "A party is not bound to inquire into the authority of a person from whom he receives money in payment of a debt, for a different doctrine would be productive of great mischief. [Thacher v. Pray, 113 Mass. 291.] This principle of law has been considered and affirmed in a number of other jurisdictions. [Smith v. Bank, 107 Iowa 620, 626; Bohart v. Oberne, 36 Kansas 284; The Penn Co. v. Dandridge, 8 Gill & J. 323; Gulick v. Grover, 33 N. J. L. 463, 472; School Dist. v. Bank, 102 Mass. 174; Wood v. Bank, 129 Mass. 358.] It was contended for in the dissenting opinions in the case of Bank v. Badger Lumber Co., 54 Mo. App. 327, and 60

Mo. App. 255. Since that case was decided, the principle was stated to be the true rule of law in Bank v. Bank, 102 Mo. App. 357, 363, and Hardware Co. v. Mayer, 110 Mo. App. 14, 19. We therefore conclude that the rule announced in Bank v. Badger Lumber Co. should not be considered sound law.

The result following the foregoing considerations is that the judgment should be for the defendant and it is accordingly reversed. All concur.