## Robinson & Co., et al. v. Bank of Pikeville, et al.

(Decided February 1; 1912.)

### Appeal from Pike Circuit Court.

1. Banks—Liability on Forged Check.—Where a bank, without knowledge of the fact that it is forged, accepts a forged check as a deposit, and places the amount of it to the credit of a depositor who is innocent of any wrong-doing, it creates by this act the relation of debtor and creditor between itself and the depositor, and authorizes the depositor to draw checks against it for the amount of the deposit, and it cannot refuse to pay checks so drawn after it has discovered that the check was a forgery.

2. Same—Rights of Innocent Holder of Check Given by Customer.— When a bank by its course of dealing with a customer authorizes him to issue checks on it, it will be estopped to say after such checks have come in good faith into the hands of innocent holders that the customer did not have any money to his credit, and for this reason decline to pay the checks.   Especially should this principle obtain when to permit the bank to make this defense would cause a bona fide holder of the customer's check to lose the amount of it.

3. Principal and Agent—Fraud of Agent.—The act of an agent in accepting in satisfaction of a debt due his principal a check that he knows has been obtained by means of a fraud practiced on the bank on which it was drawn, will not estop the innocent principal from recovering from the bank the amount of the check which has been turned over to the principal by the agent.

JOHN C. STROTHER, JAMES GOBLE for appellants.

J. M. YORK for appellees.

Opinion of the Court by Judge Carroll—Reversing.

On the 3d day of January, 1891, J. B. Jones presented to the appellee Bank of Pikeville a draft for $1,960, drawn by the Moline Bank of Illinois, to the order of the Deer Mansur Company, and endorsed to

the Hickman Lumber Company. It bore the date of December 11, 1890. The bank discounted the draft, paid Jones $300 in cash, and placed the remainder of the draft to his credit on its books, giving him a pass book and check book. On the following day, Jones with the $300 in money and the pass book and check book, went to Hindman, in Knott County, Kentucky, and there met J. M. Bailey, who was indebted to appellants J. M. Robinson & Co. in the sum of $827.50, for which amount an execution had been levied on Bailey's property. Jones gave Bailey a check for the amount of the execution, which Bailey endorsed to Kelly, the deputy sheriff who had levied the execution. At the same time, Bailey gave to Kelly Jones' check to satisfy other execution debts Kelly had against him, the total of the checks aggregating some $1,011. In the early part of January, Kelly, who refused to accept these checks until satisfied they were good, forwarded them to the Pikeville bank for payment, and on the 8th day of January, 1891, the Pikeville bank wrote Kelly the following letter:

"Pikeville, Ky., January 8, 1891.
"L. D. Kelly, Esq.:

"Dear Sir—Mr. Jones was here last Saturday. I paid off the teachers of this county, which amounted to over $5,000, and I told Mr. Jones at the time that I could not pay him the money on his check as I was close for cash. I have got plenty of money in my Cincinnati bank and other banks, but haven't any more than the regular reserve here. Therefore, I write you and ask you if you can not make it convenient to check this out at different times by giving to parties below and to merchants over there, so they can send them to their banks and their banks to me. In that way, I am out no currency. I send you a bank book and a check book, and if you can do this way conveniently, it will very greatly oblige,
Yours truly,
"J. B. Hatton, Cashier."

After Kelly received the letter, with the check book and pass book showing that there had been placed to his credit in the bank the amount mentioned, and on January 16, 1891, he drew checks for the amount due the appellant and the other execution creditors on the bank in favor of S. J. Kilgore, attorney for appellant,

and returned the executions against Bailey satisfied. On the 10th of March following, the check given by Kelly to Kilgore to satisfy the debt of appellant was presented to the bank and payment refused, for the reason that the bank had discovered that the draft presented to it by Jones on January 3, 1891, was a forgery. After the bank refused to pay the check, the appellant conceiving that the executions against Bailey had been returned satisfied by fraud or mistake, on account of the facts before stated, brought an action against Bailey to have the return on the execution quashed and other executions issued against him. It succeeded in the Circuit Court in obtaining the relief sought, but Bailey appealed to the Superior Court of Kentucky, which reversed the judgment of the Circuit Court, holding that the acceptance by Kelly of the check given by Jones to Bailey was equivalent to the payment of the execution in cash and authorized the sheriff to return it satisfied. Bailey v. Robinson & Co., 14 Ky., L. R., 670. Thereafter, the appellant brought this suit against the bank to recover the amount of the check which Kelly gave to Kilgore to satisfy its execution against Bailey. Upon hearing in the lower court, the petition was dismissed and this appeal prosecuted.

In its answer to the suit brought against it, the bank averred in substance that the draft presented by Jones was a forgery, and that at the time it placed to the credit of Jones the $1,660, and to the credit of Kelly the $1,011.30 it had not discovered that the draft was forged. It also set up lack of diligence in presenting to it for payment the Kelly check; and further, that Kilgore who was at the time the agent and attorney for appellant was a party, together with Jones and Bailey, to the fraud and forgery perpetrated upon it in the presentation of the draft by Jones.

It is conclusively shown by the evidence that the draft presented to the bank by Jones was in fact made payable to the Hickman Lumber Company, but by some misadventure the letter enclosing the draft to the Hickman Lumber Company, which was addressed to Hickman, Ky., fell into the hands of Bailey, who was operating a lumber company at Hindman, in Knott County, Kentucky. When the draft in this manner came into the possession of Bailey, he and Jones conceived the idea of forging the name of the Hickman Lumber Com-

pany on the draft and obtaining the money it called for, and, in pursuance of this plan the draft was presented as before stated to the Bank of Pikeville. Nor is there any issue made or dispute about the fact that the bank placed to the credit of Jones $1,660 and gave to him a pass book showing that there was to his credit this sum, or, that there was placed to the credit of Kelly on the books of the bank $1,011.30, and that he was given a pass book showing this fact, or, that Kelly gave to Kilgore a check drawn on his account in the bank sufficient to satisfy appellant's execution debt, or, that the payment of this check was refused. There is really only one issue of fact made in the case, and that is, whether or not Kilgore was a party to the fraud practiced by Jones and Bailey. Upon this issue, Jones testified that Kilgore knew all about the transaction, while Kilgore denies any knowledge of the fraud. Aside from this issue of fact, which will be further noticed, the question for our consideration may be thus stated: Will a bank that has opened an account with a bona fide customer be permitted to dishonor a check that he in good faith has issued on this account in satisfaction of a debt, upon the ground that it was induced to open the account and give the customer credit by means of a fraud and forgery that had been practiced upon it by another customer out of whose account and connection with the bank the entire transaction grew when to sanction the dishonor would cause the loss to fall upon an innocent party.

The chief argument of counsel for the bank is rested upon the ground that Kilgore, the agent and attorney of appellant, was a party to the fraud and that it occupies no better position than its agent Kilgore would if he was seeking to collect the check for himself and on his own account. Of course, if this legal conclusion of counsel was sound, and the evidence supported the contention that Kilgore was a party to the fraud, it would be an end of the case. But we do not take the same view of this issue that counsel does. If Kilgore was a party to the fraud, his conduct would not prejudice the rights of appellant, who is admittedly the owner of the debt for which the check was given, and free from any blame in the transaction. In short, the attitude of appellant is precisely the same as if Kelly had made the check payable to it in place of payable to

Kilgore, its attorney. We do not know of any principle of law that upon a state of facts such as is here presented would charge the principal with the fraud or delinquency of his agent. Certainly Kilgore had no authority, express or implied, to assist in practicing a fraud upon the bank or any one else. If he did so assist, he was acting entirely outside of the scope of his employment, and the appellant is not bound by what he did. Hardy v. Chesapeake Bank, 51 Md., 562, 34 Am. Rep., 325; Weisser v. Denison, 10 N. Y., 68, 61 Am. Dec. 731. As the agent or attorney of appellant in the collection of this debt against Bailey, the authority of Kilgore was limited to matters that related to the collection of the debt. But, aside from this, the ground upon which the bank is liable does not rest on what Kilgore did or did not do. Its liability grows out of the fact that it opened an account with Kelly, who was entirely innocent of any wrong-doing, and placed to his credit a sum of money, and thereby authorize him to issue checks against his account for the amount placed to his credit. The initial fraud was practiced by Jones, but Jones was only enabled to reap any benefit from this fraud or to involve other people in trouble on account of it by the conduct of the bank in receiving from him a forged draft and giving him credit he was not entitled to. By this course of dealing with Jones, it authorized him to issue checks on the account it had put to his credit in the bank, and on the faith of its assurance that the check he gave Kelly was all right, Kelly was induced to accept the check and release the execution levy. But the carelessness, or want of diligence on the part of the bank did not stop with this. Five days after it had placed to the credit of Jones the amount of the forged check, it accepted Jones' check to Kelly drawn on this account and placed it to the credit of Kelly, thereby authorizing Kelly to issue checks on the account, which he did and as a consequence the only recourse the appellant has is against the bank. Between the date of the presentation of the draft by Jones, and the receipt of Kelly's check, the bank had ample time and opportunity to ascertain whether or not the Jones' check was genuine, but it did not so far as the record shows take any steps to inform itself concerning the validity of the draft. Both Jones and Kelly are to be treated as customers of the bank; and,

when it comes to a question as to whether the bank should lose or the appellant that was misled by its course of dealing, we think it clear that the loss should fall on the bank. When the bank put to the credit of Kelly Jones' check, it was a settlement and satisfaction of the Bailey debt. Liability for the debt was then transferred to and assumed by Kelly, who in turn acquitted himself as held in the case of Bailey v. Robinson & Co., supra, by giving to appellant a check that the bank said it would honor. The letter written by the bank to Kelly and the deposit to his credit had the further effect of creating the relation of creditor and debtor between Kelly and the bank. In short, so far as the rights of these parties are concerned, Kelly had to his credit in the bank the amount of the debt due appellant, and the bank is estopped from setting up the defense against a bona fide holder of the check drawn in good faith by Kelly, the fact that it was induced to give credit to Kelly on its books by reason of a fraud practiced upon it by Jones.

The commercial interests of the country demand that banks should be held to a high degree of care in the conduct of their business with customers to whom they give credit they would not otherwise be able to obtain. And when a bank receives, not for collection, but as so much money, a check and places the amount to the credit of a customer, it thereby assumes liability for this amount to all persons to whom the customer may give checks. And we think the principle of law is or should be well settled that when a bank by its course of dealing with a customer authorizes him to issue checks on it, it will be estopped to say after such checks have come in good faith into the hands of innocent holders, that the customer did not in fact have any money to his credit, and for this reason decline to pay the checks. Especially should this principle obtain when to permit the bank to make this defense would cause a bona fide holder of the customer's check to lose the amount of it. Our attention has been called to a number of analogous cases treating on this subject, and from them we select the following as illustrating the doctrine that under circumstances such as are disclosed by this record a bank will not be allowed to escape liability, although it may suffer a loss in consequence of its course of dealing.

In Oddie v. National City Bank of New York, 45 N. Y., 735, 6 Am. Rep., 160, the facts were that the bank received a genuine check drawn on itself in favor of Oddie by Davis and Aiken, regular depositors, and credited Oddie with the amount of it on his deposit book. Afterwards and on the same day, the bank discovered that the account of Davis and Aiken was overdrawn, when Oddie was given credit by their check, and refused to pay the check. Thereupon, Oddie brought suit against the bank to recover the amount of the check. In the course of the opinion, the court said:

"In determining the legal effect of such transactions, we must apply the same rules applicable to all contracts and business affairs, and effectuate and carry out the intention of the parties, to be gathered from their acts and declarations, and the accustomed and understood course of the particular business. Applying these rules, there can be no doubt but there was an express demand on one side, and consent on the other, that this check should be placed to the credit of the plaintiff as a deposit. The legal effect of the transaction was precisely the same as though the money had been first paid to the plaintiff, and then deposited. When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in any other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, but if it accepts such a check and pays it, either by delivering the currency or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine. In the case of a deposit, the bank becomes at once the debtor of the depositor, and the title of the deposit passes to the bank. * * * Under these circumstances it would be inequitable and unjust to permit the defendants to throw the responsibility of their own acts upon the plaintiff, and the law has established a rule which forbids it. Every element of an estoppel in pais exists in this case."

In Hardy v. Chesapeake Bank, 51 Md., 562, 34 Am. Rep., 325, it is said:

"It is now perfectly well settled, that the relation between banker and customer, who pays money into the bank, or to whose credit money is received there on deposit, is the ordinary relation of debtor and cred-

itor; and that when the bank receives the money as an ordinary deposit and gives credit to the depositor, the money becomes the funds of the bank, and may be used by it as any other funds to which it may be entitled. It is accountable for the deposits that it may receive as debtor, and in respect to ordinary deposits there is an implied agreement between the bank and the depositor that the checks of the latter will be honored to the extent of the funds standing to his credit. * * * There is no question of trust, therefore, between the parties, but their relation is purely a legal one; and if the bank pays money on a forged check, no matter under what circumstances of caution, or however honest the belief in its genuineness, if the depositor himself be free of blame, and has done nothing to mislead the bank, all the loss must be borne by the bank, for it acts at its peril, and pays out its own funds, and not those of the depositor. It is in view of this relation of the parties, and of their rights and obligations, that the principle is universally maintained, that banks and bankers are bound to know the signature of their customers, and that they pay checks purporting to be drawn by them at their peril.''

In Wasson v. Lamb, 120 Ind., 514, 6 L. R. A., 191, it is said:

''The settled rule is, where checks, drafts or other evidences of debt are received in good faith as deposits, if the bank credits them as so much money, the title to the checks or drafts is immediately transferred to the bank, and it becomes legally liable to the depositor as for so much money deposited.''

In First National Bank of Cincinnati v. Burkhardt, 100 U. S., 686, 25 L. Ed., 766, it is said:

''When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, or to receive it upon such conditions as may be agreed upon. If it be rejected, there is no room for any doubt or question between the parties. If, on the other hand, the check is offered as a deposit and received as a deposit, there being no fraud and the check genuine, the parties are no less bound and concluded than in the former case. Neither can disavow or repudiate what has been done. The case is simply one of an executed contract. There are the requisite parties, the requisite

consideration and the requisite concurrence and assent of the minds of those concerned."

In Morse on Banking, Section 289, the author after stating that the relation of debtor and creditor exists between the depositor and the bank, proceeds to say:

"It follows that the act of deposit having been once consummated, nothing short of payment on the part of the bank, or some act of the depositor himself, will suffice to exonerate it from the indebtedness it has assumed."

In German National Bank v. Grinstead, 21 Ky. L. R., 674, the facts were that Taylor, a dealer in eggs, made an arrangement with the bank by which he was to draw drafts on his New York consignees with a bill of lading covering the consignment of eggs attached thereto, and turn it over to the bank, and thereupon the bank would place the amount of the draft thus secured by the bill of lading to the credit of Taylor on the books of the bank and on Taylor's pass book, as so much cash. Taylor would then draw checks on the bank against this cash credit for the amount of the purchase price of the eggs in favor of the persons from whom he had purchased them. One of the drafts drawn by Taylor on his New York customers was dishonored, and thereupon the bank refused to pay the checks drawn on it by Taylor and made payable to the persons from whom he purchased the eggs. In holding the bank liable for the payment of the checks, Taylor had given, although the bank failed to collect the New York draft given to it by Taylor and on the faith of which Taylor drew checks on it in favor of the purchasers, the court said:

"The purpose of the arrangement was to secure Taylor as a customer and to enable him to buy and ship the eggs. His account having been credited by the draft, the outstanding checks were an appropriation of this credit."

It is further insisted that the delay in presenting the check relieved the bank from the duty of paying it, but there is no merit in this contention. If the check given to appellant had been presented the same day that the credit was given to Kelly on the books of the bank, or the following day, and before the bank discovered the forgery, it would have been paid; and, of course, the bank would be no better off than it will be

when it is now compelled to pay it as there is no suggestion that the bank at any time could have recovered from Jones or Bailey the money. By the payment of the check at any time, the bank would be the loser. The delay in presenting it did not in any manner that we can conceive of prejudice its rights.

Wherefore, the judgment of the lower court is reversed with directions to enter a judgment in favor of appellant for the amount of the debt with interest from March 10, 1891.