## First National Bank of Owenton v. Sidebottom.

(Decided April 11, 1912.)

Appeal from Owen Circuit Court.

Banks and Binking.—A bank that in the ordinary course of business pays a check given by its customer on his account, cannot recover the amount so paid from the person presenting the check if it subsequently develops that the customer did not when the check was paid have to his credit funds to pay it, or, upon the theory that it was paid under a mistaken belief on the part of the bank that the customer had sufficient funds to pay it when it was paid.

W. A. LEE for appellant.

VALANDINGHAM '& ALEXANDER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On March 4, 1911, James F. Miller, a deputy sheriff for appellee Sidebottom, Sheriff of Owen County, gave to him in payment of taxes that he had collected as such deputy, two checks on the appellant bank, amounting in the aggregate to $2,469, which checks Sidebottom placed for deposit and collection with the Farmers National Bank of Owenton, where he was a customer, a few days thereafter and in due course of banking business the checks were presented by the Farmers National Bank to the appellant bank and paid. Soon afterwards, the appellant bank brought this suit against Sidebottom to recover from him $1,495. It averred in substance that Miller, as deputy sheriff, had an account with it, and on March 4, 1911, drew his checks payable to it on other banks in the county for $2,469; one of these checks which was for $1,495 being on the Citizens Bank of New Liberty. That it placed the amount of these checks to the credit of Miller, and forwarded the checks, including the one on the Citizens Bank of New Liberty, to the banks upon which they were drawn for payment. That the check given by Miller on the Bank of New Liberty was returned "not paid for want of funds," but that before this check was returned so endorsed or it had notice of its non-payment it had paid as before stated the checks given by Miller to Sidebottom. It averred that Sidebottom knew at the time he received the checks from Miller, and at the time the checks given to him by Miller were paid, that Miller did not have that amount of money on deposit, and that Miller had given to it the checks on the Bank of New Liberty and other checks, and that it paid the checks given by Miller to Sidebottom with the understanding and agreement on the part of Sidebottom that if the checks given to it by Miller were not paid, Sidebottom would refund to it the money paid to him.

The answer of Sidebottom denied all the material averments of the petition.

On a trial of the case before the court, to whom the law and facts were submitted, the only witnesses introduced were Forsee, the cashier of the appellant bank, and Sidebottom, the appellee. Forsee testified in substance that Miller, as deputy sheriff, had an account with his bank, and that on March 4, 1911, Miller gave to him as cashier a check for $1,495 on the Citizens Bank of New Liberty, as well as checks on other banks. That these checks were sent in due course of business to the banks

on which they were drawn for payment, and the check given on the New Liberty bank returned "not paid for want of funds." He further testified that on March 5th, Sidebottom "came to the bank with a check of J. F. Miller, deputy sheriff, and wanted to know if it was good. I said he had given his check on several different banks, several on Jonesville, on Sparta Bank, and one on the New Liberty bank, and in every case these checks had been accepted by the different banks. I did not know whether it was good or not; I suppose it would be, but I did not know that. Under these circumstances we pay these checks—we pay your check; we do not know whether they are good or not, but we pay your check with this in view. If the check is not all right and is returned, of course we expect payment of the check and that you will make it good. I did not say it in that many words, but that is about the substance of it. I told him we paid this check under these circumstances, presuming he would pay it back if they were returned not paid." He further testified that the amount of the checks that Miller deposited were put to his credit in the bank, and that the two checks amounting to $2,469, dated March 4, 1911, given by Miller to Sidebottom were paid and charged to the account of Miller with the understanding that the money would be refunded if the checks Miller had deposited were not paid.

When the checks given by Miller to Sidebottom and placed by Sidebottom with the Farmers' National Bank for collection, were presented to the appellant bank for payment, it does not appear that any representations were made or any questions asked. The checks were simply paid in the usual course of business, as the books of the appellant bank showed that Miller had to his credit an amount sufficient to pay the checks he had given to Sidebottom.

Sidebottom testified that some days before Miller gave him the checks before mentioned, he inquired of Forsee, cashier of the appellant bank, the condition of Miller's account, but Forsee declined to give him any information about it, and this was the only conversation he had with Forsee in reference to the matter, until after he learned that the check given by Miller on the New Liberty bank had been returned not paid. That he had no information previous to the payment of the checks that there was any doubt about Miller's checks being good, and there was no understanding or agreement of any

kind on his part to refund any money in the event the checks given by Miller to the bank were not paid.

It will be observed that there is direct conflict in the evidence of Forsee and Sidebottom as to what occurred between them in reference to the checks given by Miller to Sidebottom being good, provided the checks Miller gave the bank were paid, Forsee testifying in substance that he told Sidebottom the checks were good provided the checks Miller had put in the bank for collection were paid; while Sidebottom denies that any conversation of this kind occurred. But there is no claim on the part of Forsee that when the Miller checks were presented for payment and paid to the Farmers' National Bank, that any conditions or qualifications were attached to the payment. Of course, if the checks given by Miller to Sidebottom were paid with the understanding or agreement on the part of Sidebottom that he would refund to the bank the amount paid if the checks Miller' had placed on deposit were not paid, the appellant bank would be entitled to recover from Sidebottom the amount in controversy. But the evidence does not justify us in holding contrary to the view of the judge of the lower court that an agreement or arrangement of this kind was made, and so we will treat the case as if the checks given by Miller to Sidebottom were paid in the ordinary course of business and without any agreement or understanding that the amount of them should be refunded in the event it developed that the checks given by Miller and on the faith of which his checks to Sidebottom were paid, were not paid. With this issue of fact out of the way, the simple question presented in this—can a bank that in the ordinary course of business pays a check given by its customer on his account recover the amount so paid from the person presenting the check if it subsequently develops that the customer did not when the check was paid have to his credit funds to pay it, or, if it is paid under the mistaken belief on the part of the bank that the customer had funds sufficient to pay it. This question was before us in the case of Robinson & Co. v. Bank of Pikeville, 146 Ky., 538, and it was there ruled that when a bank pays a check given by its customer, it cannot recover from the party to whom the check was paid the amount of it. The authorities supporting this principle are so fully stated in the Bank of Pikeville case that it does not seem necessary to repeat them here.

The point is further made that as Miller was a deputy for Sidebottom, his account with the bank as deputy sheriff was subject to the control of Sidebottom, and that when it paid out of this account Sidebottom's checks, it was in effect the same as if it had paid the checks out of an account Sidebottom had with the bank; or, in other words, that the attitude of the parties was the same as if Sidebottom had overdrawn his own account. We are however, unable to agree with counsel in this view of the law applicable to the case. It is true that the account of Miller was in his name as deputy sheriff, but there is no showing in the record that Sidebottom had any control over this account or the right to draw on it, except by virtue of checks given to him by Miller. It was Miller's account, and not Sidebottom's, and Sidebottom occupied in relation to the account the same attitude as would any other person to whom Miller might give a check drawn on it.

Wherefore, the judgment of the lower court dismissing the petition is affirmed.