ARKANSAS VALLEY BANK *v.* KELLEY.

Opinion delivered February 27, 1928.

1. BANKS AND BANKING—EFFECT OF ACCEPTING CHECK.—Where a bank receives a check, not for collection, but as so much money, and places the amount to the credit of a customer, it assumes liability for such amount to all persons to whom the customer may give checks.

2. PRINCIPAL AND AGENT — RATIFICATION. — Ratification of the unauthorized acts of an agent, in order to render them binding on the principal, must have been made with the knowledge of all material facts, and ignorance of such facts will render an alleged ratification ineffectual.

3. PRINCIPAL AND AGENT—LIABILITY OF PRINCIPAL FOR AGENT'S OVER-DRAFT.—Where a bank permitted an unauthorized agent to over-draw his account, it cannot recover the amount of the overdraft from the agent's principal upon a mere showing that the principal received the proceeds of the overdraft, without knowledge of all the circumstances, as, when demand for restitution is made, the principal cannot be placed *in statu quo.*

4. PRINCIPAL AND AGENT—LIABILITY FOR AGENT'S OVERDRAFT.—A bank crediting a check to an agent's account as a cash deposit, and not for collection, could not, after such check proved to be worth-less, recover from the undisclosed principal who had innocently received the proceeds thereof by the agent's check, where the principal could not be placed *in statu quo.*

Appeal from Sebastian Circuit Court, Fort Smith District; *J. Sam Wood,* Judge; affirmed.

*Warner, Hardin & Warner,* for appellant.

*Daily & Woods,* for appellee.

SMITH, J. At the trial from which this appeal comes the court made a finding of fact which presents the issues in the case. Without reciting the testimony, it may be said that the finding of fact is largely in accord with the undisputed testimony, and, as to any matters about which there was a conflict, is supported by substantial testimony. We therefore assume the facts to be as found by the court. This finding is as follows:

"During the season of 1925 H. J. Payne acted as agent for Leigh Kelley for the sale of the latter's pota-toes, under a verbal contract, by the terms of which Payne was required to find purchasers, deliver to them

the potatoes, collect the purchase price, and remit the proceeds, less his commission, to the defendant Kelley. That, pursuant to such contract, Payne sold, among others, three cars of potatoes belonging to Kelley, Patty and Rogers to one H. W. Burrough, and took the latter's check for the sum of $1,664.68 to cover the purchase price, said check being drawn on the Bank of Lavaca and payable to 'H. J. Payne & Sons'; that said sale was made on the sole judgment of Payne, and the identity of the purchaser was not known to Kelley and associates. That said check was indorsed by Payne, the name of Kelley and his associates not appearing thereon, and deposited in his (Payne's) checking account with plaintiff bank in the name of H. J. Payne, Agent.   That Payne was acting as agent for some fifteen or twenty other growers of potatoes under similar contract, and deposited the proceeds of all sales made by him for all growers in this same checking account; that he remitted to all such growers by check drawn on said account; that Kelley and his associates had no knowledge of the fact that collection from Burrough had been made by check payable to Payne; that, in accepting such check from Payne and in crediting the amount thereof to Payne's checking account, plaintiff had no knowledge of Payne's agency for Kelley and associates in the matter of the sale of potatoes, nor of his agency for various other potato growers; that, in so crediting such check to the account of Payne, plaintiff relied solely on the indorsement and credit of Payne; that, subsequently to the indorsement, deposit and crediting of the Burrough check, as aforesaid, Payne remitted to Kelley by checks drawn on said account for seven or eight cars of potatoes which he had sold for Kelley, such remittances including, among other cars, the three cars sold to Burrough; that said checks so drawn by Payne to Kelley on the plaintiff bank were presented by Kelley to plaintiff for payment and were by plaintiff paid; that thereafter the Burrough check was returned to plaintiff unpaid, resulting in an overdraft in the said account of Payne with plaintiff; that plaintiff made demand on

Payne to make good the overdraft, but made no demand on Kelley for nearly two months after the overdraft was created. That plaintiff did not notify Kelley or his associates that it would look to them for payment of the overdraft for said period of nearly two months; that, after demand was made on Kelley, plaintiff accepted a payment of $100 from Burrough on said overdraft account. That the checks given by Payne to Kelley were accepted by Kelley in good faith in payment of amounts which he was entitled to receive from Pane; that said checks were presented by Kelley in good faith to plaintiff for payment, and were deliberately paid by plaintiff.''

Upon this finding of fact the court declared the law as follows:

''That, in the transaction between plaintiff and Payne, Payne was acting for himself, and not for Kelley and associates; that Kelley and associates are not liable to plaintiff as undisclosed principals of Payne; that, in accepting Burrough's check and crediting it to Payne's checking account, and in paying the checks of Payne drawn against it, plaintiff elected to rely solely on the credit of Payne; that the return of the Burrough check unpaid merely resulted in an overdraft of Payne's account with plaintiff, for which overdraft plaintiff's recourse is against Payne and Burrough alone.''

Upon this finding of fact and declaration of law, judgment was rendered in favor of Kelley and his tenants, all of whom were sued by the bank for the amount of the check drawn by Burrough in payment of the three cars of potatoes sold by Payne to Burrough belonging to Kelley and his tenants, for which check the bank had given Payne credit, who remitted the proceeds to Kelley by check drawn upon the account of Payne, as agent, with the plaintiff bank, and this appeal is from that judgment.

Appellant insists, for the reversal of the judgment of the court below, that the declaration of law is not supported by the finding of fact made by the court, as it appears from the facts found by the court that Kelley and

his tenants were the undisclosed principals of Payne, their agent, and received the benefits of the transaction by which Payne procured the money from the plaintiff bank. It is insisted that, as Payne was the agent for an undisclosed principal who received the proceeds of the worthless check deposited by him, the principal should be held liable for the amount of this check as for money had and received to the account of the principal. The plaintiff bank asked findings to this effect, which the court refused to make, and the plaintiff duly excepted to this refusal.

Payne and Burrough were made defendants to this suit, and judgment was recovered against them for the want of an answer.

It appears that, before the institution of this suit, Burrough had agreed with the plaintiff bank to repay the amount of his worthless check at the rate of $100 per week, and that, pursuant to this agreement, a payment of $100 was actually made, but, as Burrough defaulted in the subsequent payments, the bank brought this suit, and has recovered judgment against both Payne and Burrough for the amount of the overdraft, less the hundred-dollar credit.

Appellees insist that, the bank having elected to sue Burrough and Payne, cannot also pursue the inconsistent remedy of suing them. As we have concluded that the declaration of law above quoted is correct, we do not consider or decide whether the bank is barred from suing Kelley, having sued Kelley's agent and Burrough.

It will be borne in mind that Payne employed his own method of making collections for the potatoes sold for the account of Kelley and his tenants and other potato growers, and all money so received by Payne was placed to the credit of his account as agent. But Kelley was not Payne's only principal, as all growers for whom Payne sold potatoes were also his principals, and there was no disclosure to the bank that Kelley was one of these. It was within the discretion of the bank to have accepted Burrough's check for collection for Payne's account, or to accept it as a cash deposit for that amount,

and it elected to take the latter action. It was not induced to do so upon the faith of Kelley's credit or Payne's agency for Kelley, as Kelley was not known in the transaction.

In the case of *J. M. Robinson & Co.* v. *Bank of Pikeville,* 146 Ky. 538, 142 S. W. 1065, it was held by the Court of Appeals of Kentucky (to quote a syllabus) that, "where a bank receives, not for collection, but as so much money, a check, and places the amount to the credit of a customer, it assumes liability for such amount to all persons to whom the customer may give checks." The opinion in that case quoted from the case of *First Nat. Bank of Cincinnati* v. *Burkhardt,* 100 U. S. 686, 25 L. ed. 766, as follows:

"When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, or to receive it upon such conditions as may be agreed upon. If it be rejected, there is no room for any doubt or question between the parties. If, on the other hand, the check is offered as a deposit and received as a deposit, there being no fraud and the check genuine, the parties are no less bound and concluded than in the former case. Neither can disavow or repudiate what has been done. The case is simply one of an executed contract. There are the requisite parties, the requisite consideration, and the requisite concurrence and assent of the minds of those concerned."

No question is made here about the good faith of the bank, or of that of Payne or Kelley. A loss has been sustained, which some innocent person must suffer, and the question is, Where must that loss fall?

In the case of *First Nat. Bank of Detroit* v. *Burkham,* 32 Mich. 328, the facts were that the drawees of a bill, the genuineness of which was not disputed, sought to recover from the payees the amount of the bill, which they had accepted and paid. The ground upon which the drawees sought to recover was that they had paid under a mistake of fact, which mistake consisted in their security from the drawer of the bill being fictitious, when they

supposed it to be genuine and reliable. Upon these facts Judge Cooley, speaking for the Supreme Court of Michigan, there said:

"It is not claimed in this case that, if the drawees had relied upon the responsibility of the drawer, and that had failed them, they would have had any ground of recovery against the payees. But we think it would be an exceedingly unsafe doctrine in commercial law, that one who has discounted a bill in good faith, and received in its payment the strongest possible assurance that it was drawn with proper authority, should afterwards hold the moneys subject to such a showing as the drawee might be able to make as to the influences operating upon his mind to induce him to make payment. The beauty and value of the rules governing commercial paper consist in their perfect certainty and reliability; they would be worse than useless if the ultimate responsibility for such paper, as between payee and drawee, both acting in good faith, could be made to depend on the motives which influenced the latter to honor the paper.

"The best view that can be taken of this case for the plaintiffs below is that there was a mutual mistake of fact under which the bank discounted and the drawees paid the bill. Conceding this, why should the drawees be allowed to transfer the loss to the bank? Usually, when one of two parties equally innocent must suffer, the law leaves the loss where it has chanced to fall; but, in a case like this, if the law should assist either party on the ground of mutual mistake, it certainly should not be the drawees. This suit seeks to reverse the rule of commercial law, and transfer from the acceptor to the payee the responsibility which the former assumes by acceptance, and which the law leaves there.

"So far we have assumed that the bank discounted the bill in good faith and for value. We think this not open to question on the facts. The amount was put to the credit of the drawer, and drawn against. The previous transactions cannot affect this unquestionable fact."

Appellant concedes that the transaction would be a closed incident, and that the loss would be upon the bank,

where it fell, but for the fact that Payne was the agent of Kelley and his tenants in selling the potatoes, and it is insisted that, inasmuch as Kelley and his tenants received the benefits of the transaction, they are liable as for money had and received.

It does not appear, however, that the law supports this contention under the facts as found by the court.

In 2 C. J., chapter "Agency," after stating the proposition that the principal must ratify the whole of the agent's unauthorized act or not at all, and cannot accept its beneficial results and at the same time avoid its burdens, and that if the principal, with full knowledge of all the material facts, takes and retains the benefits of the unauthorized act of the agent, he thereby ratifies such act, it is said, at § 115 of this chapter:

"Nor does the general rule apply where the principal is legally entitled to what he has received without assenting to the act of the agent, and he does not otherwise give his approval to such act, or where the benefit received by the principal is merely incidental and arises out of a credit extended by a third person to the agent individually, or where the other party to the transaction did not deal with the agent as such, but in his individual capacity." And further: "The mere fact that the principal has received or enjoyed the benefits of the unauthorized act will not amount to a ratification if he did so in ignorance of the facts. * * * A principal also has a right to receive money from an agent in payment of a debt due from the latter, without inquiry as to the source from which it came, and, if it is in good faith so received and applied by the principal, its subsequent retention, after he learns that it was procured through an unauthorized transaction entered into by the agent in his name, will not amount to a ratification of such transaction."

Among the cases cited in the note to the text quoted is that of *Martin* v. *Hickman*, 64 Ark. 217, 41 S. W. 852. In that case Hickman sued Martin upon an alleged contract made by Clary as agent of Martin, whereby Hickman conveyed a town lot to Martin, it being alleged that

Clary agreed that Martin would assume the payment of a certain note for $147 which Hickman owed. On conflicting testimony the jury found that Clary had made the agreement, and that finding was not disturbed on the appeal. It was denied by Martin that he had authorized that action, or had ratified it, but the jury also found against Martin on that contention. In holding that the last finding was not sustained by the testimony, although Martin had accepted the benefits of Clary's trade, the court there said:

"It is well settled that ratification of the unauthorized acts of one who assumes to be an agent, in order to render them binding on the principal, must have been made with the knowledge of all material facts, and that ignorance of such facts will render an alleged ratification ineffectual and invalid. *Lyons* v. *Tams*, 11 Ark. 189; *Combs* v. *Scott,* 12 Allen (Mass.) 493; 1 Am. & Eng. Enc. Law (2 ed.), 1189, and cases cited.

"A principal will not be considered as having ratified an unauthorized act of his agent merely because he receives property and avails himself of the advantages derived from such act, when he did not learn that such agent had exceeded his authority until after he had sold the property, and after the circumstances were such as to put it beyond his power to return or restore the property. *Bryant* v. *Moore,* 26 Maine 84, 45 Am. Dec. 96; *Thacher* v. *Pray,* 113 Mass. 291, Am. Rep. 480; *Brown* v. *Wright,* 58 Ark. 20, 22 S. W. 1022, 21 L. R. A. 467. In this case the evidence is uncontradicted, not only that Martin had never authorized Clary to agree for him that he would assume and pay the $147 sued for, but also that he had no notice of such a claim on the part of Hickman until long after he had sold the property received from Hickman."

In *Case* v. *Hammond Packing Co.,* 105 Mo. App. 168, 79 S. W. 732, the facts were that King was the agent of the packing company, with authority to sell meats and to collect and remit the sales price to the packing company. The plaintiff, Case, was engaged in the banking business, and

King opened an account with him in the name of ''The Hammond Packing Company—W. A. King,'' to the credit of which King deposited his individual funds and his collections for the packing company, and against which he checked in his individual business. From time to time King drew checks on this account in his individual name, which he sent to the packing company as proceeds of meats sold by him. This mode of business continued for several months, until King finally drew two checks, aggregating $1,581, which overdrew the account that amount. The bank demanded that the packing company make the overdraft good, upon the theory that it had received the benefit thereof from its agent. In other words, the suit was for money had and received, as in the instant case. The packing company refused to pay, upon the ground that it had never authorized the opening of the account, and did not know that it had been opened until the bank demanded payment of the overdraft. The testimony showed that the agent King did not have any authority to represent the packing company, except to sell its meats and collect and remit the proceeds of such sales.

So here, there was the same limitation upon Payne's authority, and the cases are therefore identical, except that, in the packing company case, the bank knew who the agent's principal was, a fact unknown to the appellant bank in the instant case, and except also that Payne did not have an account with appellant bank in his principal's name, as did the agent King in the packing company case.

In holding that the packing company was not liable for this overdraft, although it had received the proceeds of the checks which produced it, the court said: ''Such agency (as King had) did not authorize him to open a bank account for defendant (the packing company), nor to borrow money for it. Nor did such agency confer an apparent authority on King, justifying plaintiff (the bank) in believing real authority existed.'' It was there further said:

"But it is said that defendant received King's checks on the plaintiff bank, and must have known of the account. The checks were notice to defendant that King had an account with plaintiff, but not that it had. Indeed, King's individual checks could not lead one to suppose they were drawn on his principal's account, for such checks would not authorize payment out of the principal's money. *Ihl* v. *Bank,* 26 Mo. App. 129. There was nothing shown from which it can be inferred that defendant ratified King's act in overdrawing. As has been already stated, the defendant did not know that King had opened an account in its name. It did not know that the money which it received was an overdraft on such account. It received and accepted the money as money due from King, which he had collected from customers. Money is a current fund, which any one, without notice, has a right to receive in good faith in payment of a debt, without inquiry into the source from which it comes; and the person so receiving it cannot be compelled to restore it to him who was the true owner. *Stephens* v. *Board of Education,* 79 N. Y. 183, 35 Am. Rep. 511; *Hatch* v. *Bank,* 147 N. Y. 184, 41 N. E. 403; *Justh* v. *Bank,* 56 N. Y. 478; *Smith* v. *Bank,* 107 Iowa 620, 78 N. W. 238. But it is said by plaintiff that defendant received and kept the money represented by the overdraft. That fact does not create a liability against defendant. If money due a principal from his agent is obtained by such agent by the unauthorized use of the principal's name, and paid over to the principal, who receives it in good faith, without notice, he is not liable to the party from whom the agent got the money. The fact that he keeps the money after being informed of how the agent obtained it is not a ratification. *Thacher* v. *Pray,* 113 Mass. 291, 18 Am. Rep. 480; *Baldwin* v. *Burrows,* 47 N. Y. 212; *Gulick* v. *Grover,* 33 N. J. Law 463, 97 Am. Dec. 728; *Bohart* v. *Oberne,* 36 Kan. 284, 13 Pac. 388; *Pennsylvania Co.* v. *Dandridge,* 8 Gill & J. 323, 29 Am. Dec. 543; *Lime Rock Bank* v. *Plimpton,* 17 Pick. 159, 28 Am. Dec. 286."

We are not required to approve all that was there said to find authority in that case for denying appellant bank the right to recover from Kelley.

Another case very similar in principle to the instant case is that of *First Nat. Bank of Owenton* v. *Sidebottom,* 147 Ky. 690, 145 S. W. 404. We do not review the decision of the Court of Appeals of Kentucky in that case, as it would unduly lengthen this opinion to do so, but we quote a syllabus which reads as follows:

"A deputy sheriff, having an account with a bank, drew his checks on other banks payable to it, and gave to the sheriff two checks equal in amount to the checks so drawn, and, on presentation by the sheriff's bank, they were paid before one of the checks drawn by the deputy was returned not paid for want of funds. *Held,* in the absence of any agreement on the part of the sheriff, that, if the checks drawn by his deputy were not paid he would refund to the bank the money paid to him, the bank could not recover; the fact that the drawer of the checks was a deputy of the defendant not conferring any greater rights on the bank."

As bearing upon this question and supporting the view that a bank, which permits an unauthorized agent to overdraw his account, cannot recover the amount of the overdraft from the principal, upon a mere showing that the principal received the proceeds of the overdraft, where, when demand for restitution is made, the principal cannot be placed *in statu quo,* see the following cases: *Merchants' Nat. Bank of Peoria* v. *Nichols & Shepard Co.,* 223 Ill. 41, 7. L. R. A. (N. S.) 752, 79 N. E. 38; *Guaranty Bank & Trust Co.* v. *Beaumont, etc.* (Tex. Civ. App.), 218 S. W. 638; *Sanborn* v. *First Nat. Bank,* 115 Mo. App. 50, 90 S. W. 1033.

Here Payne employed his own means of collecting and remitting the proceeds of potatoes sold by him. Kelley had no control over Payne's account with the bank, and could only credit Payne's account with the checks drawn in his favor against it. Kelley was not advised of the overdraft until two months thereafter, during which time

the potatoes had, no doubt, been eaten or planted or otherwise consumed, and the *status quo* could not be restored.

Some innocent person must suffer, and, as the bank's election to treat as a cash deposit the check from Payne by Burrough, instead of receiving it for collection, as it might have done, caused the loss to fall upon it, the loss must remain there. This was the judgment of the court below, and it will therefore be affirmed.