## Patton v. Catlettsburg National Bank.

(Decided November 9, 1923.)

### Appeal from Boyd Circuit Court.

1. Appeal and Error—Proceeding Considered as Equitable One Below so Considered on Appeal.—Both parties and the court below having treated a proceeding as an equitable one, it should be treated on appeal as having been docketed in equity.

2. Reference—Cause Involving Accounting Properly Referred to Commissioner.—In an action between a bank and a depositor, where the bank was required to file a statement of its account with the depositor covering a period of about three years, and the investigation and balancing of that account was necessary to a determination of the questions at issue, the court was right in referring the case to a commissioner, in view of Civil Code of Practice, section 10, subsection 4, though the main contest ranged around five items of credit allowed the depositor on the bank ledger.

3. Jury—Party Held in no Position to Complain of Refusal to Grant Jury Trial.—Where motion for jury trial in cause in equity failed to state the legal questions which movant desired submitted to a jury, he cannot complain of the refusal of the court to grant such a trial.

4. Jury—Person Participating in Reference Not Entitled to Complain of Refusal to Grant Issue Out of Chancery.—One who assented to and participated in proceeding before commissioner without objection thereto, and who did not ask for an issue out of chancery until the commissioner filed his report, containing adverse findings as to all issues, and who did not insist thereon after the report was set aside until a special master's findings were filed, cannot complain of a subsequent refusal to grant an issue out of chancery.

5. Estoppel—Litigant Cannot Assent to Course of Procedure and Subsequently Insist on Other Course.—Litigant cannot assent to a course of procedure with knowledge of his right to another, but with the expectation and hope of winning his point, and, if he loses, then insist that the other course be adopted by which he will be given another chance.

6. Banks and Banking—Burden on Bank to Show Credits Erroneously Given.—In an action between a bank and a depositor, the burden of proof was on the bank to show that credits appearing on its ledger were erroneously given and that deposits representing them were not made.

7. Banks and Banking—Evidence Sufficient to Show Credits Erroneously Given Depositor.—In an action between a bank and a depositor, bank held to have sustained the burden resting on it of showing that credits to the depositor appearing on its ledger were erroneously given.

8. Evidence—Rights of Bank and Depositor Not Irrevocably Fixed by Entries in Passbook.—Generally the rights of a bank and a depositor are not irrevocably fixed by entries in a passbook or by a statement of accounts, but in all such cases the account is open to examination.

9. Estoppel—Statement as to when Bank Estopped to Deny Truth of Entries in Statement of Account.—If a depositor, to whom a bank has furnished a statement of account, has been misled to his injury by reliance on such statement, and has suffered a loss of a substantial character, or has been induced to alter his position to his detriment in some material respect as a result of the bank's act, it will be estopped to deny the truth of the statement.

10. Estoppel—Doctrine Rests on Act that has Misled One to His Injury.—The doctrine of estoppel rests on an act that has misled one who, relying on it, has been put in a position where he will sustain a loss or injury.

11. Estoppel—Loss or Injury to be Affirmatively Shown.—Under the rule that one may set up estoppel where he has been misled, and has been put in a position where he will sustain a loss or injury,

it must be affirmatively shown that the party was misled, and had been put in a position where he will sustain loss or injury.

12. Estoppel—Bank Held Not Estopped to Deny Credit to Depositor Shown by Books.—A bank, which entered credits to depositor on its ledger and in depositor's passbook, held not estopped to deny that such credits were erroneously made, because of depositor's claim that by reason of passage of time he was unable to state from memory what occurred.

O'REAR & FOWLER for appellant.

R. S. DINKLE for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

The Catlettsburg National Bank filed suit in the Pike circuit court to recover $1,400.00 from W. A. Patton alleged to have been wrongfully credited to his account at the bank in 1914 and thereafter paid out on his checks. About the same time Patton brought suit against the bank in the police court at Catlettsburg to recover a balance of $85.00 alleged to be due him from the bank. The latter case was appealed to the circuit court and consolidated with the suit in that court, where the cases were tried, resulting in a judgment in favor of the bank for $1,316.85, with interest thereon at 6 per cent per annum from August 16, 1916.

The two suits were filed as common law proceedings to recover specified sums, but after they were consolidated amended pleadings were filed, elaborating the issues and presenting a question of accounts between the parties extending over a period of two or three years. Thereafter the court referred the cause to the master commissioner to take proof and report the state of accounts. He found that Patton was indebted to the bank in the sum of $1,400.00. On the exceptions filed to this report it was set aside and a special master appointed to audit the account from October 9, 1913, to August 29, 1916, and especially to ascertain whether Patton was entitled to all or any one of five credits claimed by him. The order of reference authorized the retaking of the testimony of any and all witnesses already taken, and the taking of any other testimony that would elucidate the issues. After auditing the account and considering the evidence adduced the master reported that Patton was indebted to the bank in the sum of $1,316.85. The excep-

tions to this report were overruled, and judgment confirming it entered, from which Patton has appealed.

It is first insisted by appellant that the court erred in refusing an issue out of chancery as to five items credited to him on the ledger of appellee. Those credits were given in the year 1914, and in the main form the subject of this controversy. In arguing this point appellant says that the issues in respect to these items were purely legal; that the action was erroneously transferred to equity over his objection; and that a similar error was committed in overruling his motion thereafter made for an issue out of chancery as to the legal questions involved. Appellee contends that the case was properly cognizable in equity; that in order to arrive at the facts and the proper balance between the parties it was necessary to consider many items in appellant's account running from 1913 to 1916; and that it was required on appellant's motion to set out an itemized statement of his account, showing several hundred different items, which necessitated the transfer of the cause to equity where, according to its claim, it should have been brought. It further says that when appellant filed his answer he did not move for an issue out of chancery, and that the case was referred to the master commissioner, who heard the proof and filed his report before appellant moved for such an issue. Hence it contends that the case was triable in equity; but even if appellant was entitled to an issue out of chancery, his motion therefor came too late.

We do not find in the record filed in this court any order transferring the cause to equity. We may say, however, that both parties as well as the court treated the action as an equitable one. The transcript shows an order entered after the issues had been made referring the cause to the master commissioner to hear proof upon the issues therein and to report his findings to the court. No objection was made nor exceptions taken to this order. The master commissioner filed his report, and appellant filed exceptions thereto, as did the appellee. Two days later appellant filed a motion to transfer the case to the ordinary docket for a trial of the legal issues therein after the equitable issues had been disposed of. This motion was not passed on. At a subsequent term the commissioner's report was set aside and the cause referred to a special master, as hereinbefore stated. No objection was made to the reference. After the special master's

report was filed a supplemental report was made by him at the request of appellant, explaining certain features of the original report. The report was submitted with leave of counsel to file briefs on appellant's plea of estoppel and on his motion for an issue out of chancery, which was again renewed. At the same time appellant filed exceptions to the report. The motion for an issue out of chancery was overruled, as were the exceptions, and the report was confirmed and judgment entered sustaining its findings.

Both parties and the court, as we have stated, treated this proceeding as an equitable one. In view of these facts it should be treated on this appeal as having been docketed in equity. The question then is, was it proper to try it in equity, notwithstanding appellant's motion for an issue out of chancery?

Subsection 4 of section 10 of the Civil Code authorizes the court in its discretion, on motion of either party, or without motion, to transfer an action from the ordinary docket to the equity docket if the court shall be of opinion that such transfer is necessary because of the peculiar questions involved, or because the case involves accounts so complicated, or of such detail of fact, as to render it impracticable for a jury intelligently to try the case. It is true that the main contest in this case ranged round the five items of credit given appellant on the ledger of appellee. Nevertheless, appellee was required to file a statement of its account with appellant covering a period of about three years, and the balancing of that account was necessary to a determination of the questions at issue. In these circumstances we think the court was right in referring the case to a commissioner to ascertain the state of accounts between the parties. Wilson v. Carrollton Tobacco Warehouse Company, 182 Ky. 433; Coy v. King, 199 Ky. 65.

But, conceding that there were legal issues in the case upon which appellant was entitled to a jury trial by making timely motion therefor, he is not in position, in view of the state of this record, to complain of the refusal of the court to grant such a trial, for not only did his motion to transfer fail to state the legal questions which he desired submitted to a jury, but it appears that he assented to and participated in the proceeding before the commissioner without objection thereto, and not until an adverse finding as to all issues had been made by the

commissioner and his report filed did appellant ask for a jury trial. The proof was taken by depositions, the cause referred to the commissioner to ascertain the state of accounts between the parties, which necessarily involved a decision as to the five credits in question, and a report was filed by the commissioner denying appellant's claim. Not until all this had been done did appellant ask for an issue out of chancery. A litigant cannot assent to a course of procedure, with knowledge of his right to another but with the expectation and hope of winning his point, and if he loses then insist that the other course be adopted by which he will be given another chance. This is precisely what appellant did in respect to both reports. After the report of the master commissioner was made he did not insist on an issue out of chancery, but seemed willing to risk his chances with a special master, and not until after the special master's findings had been filed did he again ask for an issue out of chancery, and then his motion did not specify the issues that he desired to be submitted to a jury. In our opinion the court did not err in overruling the motion.

The next contention is that the evidence does not sustain the finding that appellant is indebted to appellee in the sum of $1,316.85. It is said that the burden was on appellee to show that the credits of $200.00 as of February 4, 1914, $300.00 as of March 10, 1914, $325.00 as of July 27, 1914, $225.00 as of August 29, 1914, and $350.00 as of November 17, 1914, were not covered by deposits made on those dates, and appellee's evidence on that point is wholly insufficient in view of the entries on its ledger and those made in the pass book given to appellant.

Undoubtedly the burden was on appellee to show that the credits were erroneously given, and that deposits representing them were not made by appellant. But we agree with the special master and with the trial judge that this burden was sustained. The testimony of Colbert Cecil, who kept the ledger, and indeed that of the other bank officials, shows that the bank was in a serious condition throughout the year 1914 and until 1916, when it went into the hands of a liquidating agent, and that this condition was largely brought about by accepting worthless overdrafts. The record shows that during the year 1914 national bank examiners were threatening to close the bank because of the condition of its overdrafts, and that the bank examiners examined only the ledger

of the bank to ascertain the condition of the bank's finances and overdrafts. It further appears that it was the custom of the bank in accepting deposits to give to the depositor a duplicate of the deposit slip, to file the original slip at the time the deposit was made, and after banking hours to balance the cash and checks with the original slips and enter the deposits on the day book of the bank; that later these entries were transferred to the ledger by Colbert Cecil, which we have said was alone examined by the national bank examiners. Appellee produced deposit slips for every credit claimed by appellant except the five credits aggregating $1,400.00. Slips for those credits were not found in the bank after it went into the hands of the liquidating agent, and it was ascertained at that time that the day book contained no record of any of those credits. Although the ledger was posted from the day book, the ledger contained these credits, but that is explained by Cecil on the ground that the authorities at Washington were threatening to close the bank if it did not keep down its overdrafts, and, in order to present to the bank examiners a situation which would show the bank in good condition, he entered on the ledger, when expecting bank examiners, the five false credits in question, for the purpose of making the ledger show balances in favor of appellant, whereas it would otherwise have shown overdrafts, the true state of appellant's account.

Appellant did not testify that any of the deposits were made, but relied on appellee's ledger and the entries that it had made in his pass book. The evidence shows that the entries in the pass book were taken from the ledger by the president of the bank before he learned that the false entries had been made in the ledger and without any knowledge of the true state of the account. Appellant also attempted to show the receipt of funds during the period involved which would have enabled him to make the deposits, but his efforts in this direction throw no light on the question. His theory was that the slips for the deposits were destroyed and the day book did not show the deposits because when they were made Cecil converted the funds to his own use and recorded the deposits on the ledger on which the final balance was made to cover up his peculations. There is no evidence, however, to sustain this theory. The liquidating agent and others connected with the bank testified that the records of the bank show no such conversion of funds, and Cecil positively denies that he did anything of that kind.

The special master carefully considered all the evidence, including the records, of the bank, and reached the conclusion that appellant should not be credited with any of the five items claimed. His report not only contains a resume of the evidence, but also sets forth the reasons for his conclusions. We think they are sustained by the weight of the evidence, and that it was proper to enter a judgment sustaining his findings.

But it is insisted that appellee's claim is barred by the five years statute of limitation, and further, that it is estopped to deny the verity of the credits inasmuch as it entered them on the pass book, upon which appellant had the right to rely, and, relying on it, destroyed his copies of the deposit slips. As to the first contention, it is sufficient to say that the credits were given in the year 1914, and this action was instituted in 1918, within five years thereafter. So manifestly the plea of limitation cannot be sustained.

The second question involves the right of a bank, after the lapse of several years, to attack the verity of a pass book or the statement of an account furnished by it. It is a general rule that the rights of neither party are irrevocably fixed by entries in a pass book or by a statement of accounts, but in all such cases the account is open to examination. 7 C. J., page 638. But it is also the rule that if the party to whom the statement was furnished has been misled to his injury, has suffered a loss of a substantial character or has been induced to alter his position to his detriment in some material respect as the result of his adversary's act, a plea of estoppel will lie. C. J., vol. 21, p. 1135; Bush v. Chenault, 175 Ky. 598; Lisle v. Oliver, 181 Ky. 829. So the question, is, does appellant's evidence bring him within the doctrine of an allowable estoppel?

Appellant does not claim that he kept the deposit slips that were given him or that he took receipts for his deposits, and because of the statements made to him by Cecil and the credits shown on his pass book he destroyed the deposit slips or receipts that had been given him. Consequently he lost no evidence by reason of the bank's delay in asserting its claim. It is intimated that the stubs of his checks given in 1914 showed his balances at that time, but it does not appear that anything the officers of the bank did caused him to lose those stubs. To be sure he did not produce them. He said he had lost

them, but he did produce the stubs to his checks of 1913, 1915 and 1916, and those stubs show that it was not his custom to keep records thereon of his balances in the bank.

But it is said that if the bank's claim had been presented promptly appellant would have been able to state from memory what occurred, and the lapse of time deprived him of the ability to testify from memory as to what deposits were made.. Conceding this to be true, we are nevertheless of opinion that the single disadvantage of being unable to testify when the matter was fresh in his mind should not be allowed to defeat a claim that is otherwise meritorious. Besides, that element enters into every case in which there is a delay in asserting a claim, and it is one of the reasons for the enactment of statutes of limitation. But the doctrine of estoppel rests on an act that has misled one who relying on its has been put in a position where he will sustain a loss or injury. This must be affirmatively shown. It has not been shown here. The most that can be inferred is that the appellant could have testified from memory if the action had been brought in 1914. It is not a circumstance from which a fact could be inferred, but something from which it could be assumed that appellant would have been able to testify from memory as to an issue of fact. This is not enough to work an estoppel. It follows that the plea must be denied.

From the foregoing conclusions it results that the judgment is affirmed.