BANK OF BLOUNTSTOWN v. MRS. VIRGILLIA CROSS, *et vir.*

181 So. 390.
Division A.
Opinion Filed April 9, 1938.
Rehearing Denied June 6, 1938.

*Marion B. Knight* and *Philip D. Beall,* for Plaintiff in Error;

*John H. Carter* and *John H. Carter, Jr.,* for Defendants in Error.

BUFORD, J.—Writ of error brings for review judgment in favor of the plaintiff against the defendant, Bank of Blountstown, a corporation, plaintiff in error here, on demurrer sustained to pleas to a special count of the declaration in the following language:

"For that the defendant, at the institution of this suit is indebted to the plaintiff, Mrs. Virgillia Cross, in the sum of $1,459.85, with interest thereon at the legal rate from July 7, 1936, for money payable, to-wit: that on the 6th day of July, 1936, the plaintiff, Virgillia Cross, and C. T. Cross were the owners and holders of a certain check drawn on the defendant bank by one Jack Revell for the said sum of $1,459.85, and then and there being desirous of collecting same the said C. T. Cross forthwith proceeded from Bristol, Florida, where he had received the check, to Blountstown, Florida, where the defendant bank was located and doing business, arriving there after the bank's customary banking hours, and got in touch with the cashier and met him at the banking office of the defendant bank, and presented the said check and inquired if it was good and payable; whereupon the said cashier assured the said Cross that it was, and caused the said Cross to endorse the same for payment, which he did in accordance with the

cashier's instruction, and turned the check over to the cashier for deposit to the credit of the plaintiff, Virgillia Cross, subject to check; that the said cashier took the check and issued the bank's credit slip or deposit ticket to her for the amount of $1,459.85, less $50.00 deducted for credit of W. J. Cross at her request, and a credit slip or deposit ticket was issued to him for $50.00; and said cashier then and there delivered to the said C. T. Cross the bank's customary signature card to be filled out with the authorized signatures to be honored against said deposit, and also a check book on the defendant bank to be used in checking against the deposit. The credit slips or deposit tickets mentioned are attached hereto as Exhibits 'A' and 'B' and made a part of this count. The signature card mentioned, as filled out, is likewise attached as Exhibit 'C' and made a part of this count. That after the transaction had been thus closed on July 6th, the defendant on the following day attempted to rescind the transaction with the plaintiff and notified her that her account 'was cancelled out for the time being,' assigning as a reason that O. M. Revell had come in that morning and stopped payment of the check.

"That defendant has refused to pay the plaintiff said money or any part thereof, wherefore plaintiff sues and claims damages under this count of $1,600.00."

The pleas to which demurrer was interposed and sustained were as follows:

"1. That it never was indebted in the manner and form alleged.

"2. That the transaction upon which the declaration is founded was that after banking hours of defendant, in the City of Blountstown, on July 6, 1936, and after the close of business for the day, and at a time when the said banking business of said bank would not be resumed until 9 A. M. the following morning, the plaintiff delivered to the Cashier

of said bank, a certain check drawn by Jack Revell, in the sum of One Thousand Four Hundred Fifty-nine and 85/100 Dollars, and received certain deposit slips, one for the sum of One Thousand Four Hundred Nine and 85/100 Dollars, being a deposit slip made in the name of W. J. Cross, upon the deposit slips forms of said bank, copy of which said deposit slips are hereto attached, made a part hereof and marked exhibits 'A' and 'B'; that by the terms of said deposit slips it is provided that it (the Bank of Blountstown) may charge back any item at any time before final payment whether returned or not, also any item drawn on said bank not good at the close of business on day deposited. That said check and said deposit slips were accepted by said Cashier with the understanding of the parties to the transaction that same would be handled in the regular course of business during banking hours upon the following day; that said check was drawn upon defendant; that prior to the beginning of banking hours of said bank of defendant on the following day, the drawer of said check stopped payment thereon, and that the said check was never deposited in said bank prior to the stoppage of payment thereof, nor entered upon the books of said bank.

"3. That the transaction upon which the declaration is founded was that after banking hours of defendant, in the City of Blountstown, on July 6th, 1936, and after the close of business for the day, and at a time when the said banking business of said bank would not be resumed until 9 o'clock the following morning, the plaintiff delivered to the Cashier of said bank, a certain check drawn by Jack Revell, in the sum of One Thousand and Four Hundred Forty-nine and 85/100 Dollars, and received certain deposit slips, one for the sum of one thousand four hundred nine and 95/100 dollars, being a deposit slip made in the name of plaintiff, and one in the sum of Fifty Dollars, being a de-

posit slip made in the name of W. J. Cross, upon the deposit slip forms of said bank, copy of which said deposit slips are hereto attached, made a part hereof and marked exhibits 'A' and 'B'; that by the terms of said deposit slips it is provided that it (the Bank of Blountstown) may charge back any item at any time before final payment whether returned or not, also any item drawn on said bank not good at the close of business on day deposited. That said check and said deposit slips were accepted by said Cashier with the understanding of the parties to the transaction that same would be handled in the regular course of business during banking hours upon the following day; that said check was drawn upon defendant; that prior to the beginning of the banking hours of said bank on the following day the drawer of said check stopped payment thereon; that said check drawn on this Bank was not good at the beginning of business on the succeeding day or at the close of business on any day upon which same was deposited in said Bank.

"4. That the transaction relied upon as the basis for each count of the declaration is the alleged deposit of a certain check described in the bill of particulars to the declaration, claimed to have been deposited to the credit of the plaintiff in the sum of One Thousand Four Hundred Nine and 85/100 Dollars, and in the sum of Fifty Dollars to the credit of W. J. Cross; that the said check alleged was never deposited with or in the defendant bank to the credit of said parties as aforesaid."

The amended plea was as follows:

"Defendant denies that its Cashier, at the time and place averred on July 6, 1936, advised or assured C. T. Cross that the check averred in said court was good and payable on the said 6th day of July, 1936; and avers the fact to be that on the said 6th day of July, 1936, defendant's Cashier

was approached by said C. T. Cross, about four o'clock P. M., and that he could not advise him as to whether there were sufficient funds on hand to meet said check when properly presented, since the books of said bank were locked up; but that said Cross could leave said check with said Cashier to be deposited during banking hours on the succeeding day, July 7th, 1936, said deposit to be subject to the usual terms and conditions on which deposits were received by said bank, and which said terms and conditions are set forth and described in exhibits 'A' and 'B,' to the declaration, one of which was and is:

" 'It may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at the close of business on day deposited.'

"It denies that said Cashier caused said Cross to endorse said check for payment on the 6th day of July, 1936; it avers that said check was endorsed and delivered to said Cashier to be deposited by him in accordance with the original deposit slips, duplicates of which are attached to the declaration, on the 7th day of July, 1936, the day said deposit slips are dated; and subject to the terms and conditions as set forth in said slip; that the said signature card attached to the declaration was never signed and returned to the said bank on the 6th day of July, 1936, nor on the 7th day of July, 1936; that no entries of any kind were made on the books of said bank nor was any account opened for Mrs. Virgillia Cross thereon on the 6th day of July, 1936, and no deposit book or other writing given to her showing any deposit in said Bank on the 6th day of July, 1936; that upon the 7th day of July, 1936, prior to the beginning of banking hours and at the beginning of banking hours notice was given to the said bank in writing that payment had been stopped upon said check by the drawer thereof."

Exhibits "A" and "B" referred to are copies of deposit slips, the pertinent part of which is in the following language:.

"DEPOSITED IN
"BANK OF BLOUNTSTOWN,
"Blountstown, Fla.

"By_____

"_____193_____

"In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents may send items, directly or indirectly to any bank including the payor and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited."

It is not contended that plaintiff in the court below deposited any money in the Bank of Blountstown. The record shows that plaintiff deposited a check drawn on the bank by one Jack Revell in the sum of $1,459.85; that the deposit of the check was made under a contract contained in the deposit slip; that the deposit of the check was made with the Cashier after banking hours and, therefore, was not entered on the books of the bank as a credit to the account of the plaintiff, nor as a debit against the account of the drawer of the check

It, therefore, must follow that the check was received by the Cashier and delivered to him by the depositor under the terms and conditions named in the deposit slip. This was the contract between the Bank and the would-be depositor.

It must be borne in mind, as hereinbefore stated, that this deposit was not in money, but was only a check, and, therefore, was subject to countermand at any time before payment or before its payment had been assumed and promised by the Bank as by certification or otherwise.

It is well settled that an acceptance of a check may be made on a paper other than the check itself. See Sec. 4795 R. G. S., 6881 C. G. L. But an acceptance may be general or qualified. "A qualified acceptance in express terms varies the effect of the bill as drawn." Sec. 4800 R. G. S., 6886 C. G. L. "An acceptance is qualified which is (1) conditional—that is to say, which makes payment by the acceptor dependent on the fulfillment of the condition therein stated." Sec. 4800 R. G. S., 6886 C. G. L.

The issuance of the deposit slip constituted a conditional and, therefore, a qualified acceptance and those conditions were stated in the face of the deposit slip.

The pleas were sufficient to show that the conditions of the acceptance were not met and, therefore, the Bank did not become liable as an acceptor of the check.

In the case of Ocean Park Bank v. Rogers, Court of Appeals (2nd Dist., California) reported 92 Pac. 879, after stating the facts, the Court said:

"The sole question involved is whether or not the Bank received the check without qualification as a deposit of cash to the credit of Mrs. Rogers. If it did, this fact must appear from the acts of the parties, as the record discloses nothing said upon the subject by either party to the transaction.

"Upon the foregoing facts, the court found, in effect, that the acceptance of the check was equivalent to a deposit in cash to the defendant's credit, and that plaintiff assumed the payment thereof. In so finding we think the court erred. The facts in the case of National Gold Bank, etc., v. McDonald, 51 Cal. 64, 21 Am. Rep. 697, are almost identical with those in the case under consideration. McDonald, the defendant therein, and one Barton each kept an account with the Bank, both of whose accounts at the time in question were overdrawn. In the regular course of business Barton gave his check upon the Bank to McDonald, who presented the check with his pass book to the receiving teller of the Bank, who entered therein a credit for the amount of the deposit. About 3 o'clock of the same day (the deposit having been made at 2 o'clock) the Bank returned the check to McDonald notifying him that the same was dishonored for want of funds. McDonald refused to make good the amount of the check, claiming that it had been accepted by the Bank as cash. The trial court found that McDonald presented the check for deposit as cash, that the Bank so received it and entered the same in McDonald's pass book as cash, and gave judgment for him. Upon appeal the Supreme Court reversed the case, saying: "On the motion for a new trial one of the grounds specified and relied upon was that this finding was not justified by the evidence. It is not pretended that there was any evidence of an express agreement to the effect that the check was offered and received as a cash deposit; and the court must have reached that conclusion as a deduction from the facts stated. * * * We think the court erred in the deduction, and that the finding is not supported by the evidence.' The fact that the amount of the check with other sums was entered upon a deposit slip, that the check was stamped 'Paid' and impaled upon a check file, are mere memoranda

adopted in aid of the convenient dispatch of business. They do not distinguish this case from the facts in Bank v. McDonald, *supra*. There was nothing said or done in connection with the transaction which supports the conclusion that the Bank accepted the check as cash. Had it been drawn upon another bank, and payment thereof refused, the bank could have charged it back to Rogers, notwithstanding the fact that she had received credit therefor in her pass book. Why should a different rule apply when drawn upon the bank which receives the check and enters the credit in the pass book? In either case, in the absence of any agreement to the contrary, it is received for collection. If, in the one case it be paid, the amount is placed to the credit of the depositor; in the other, if there are sufficient funds to the credit of the drawer, the amount of the check is transferred on the books of the bank from the account of the drawer to the account of the depositor. If upon presentation of the check the account of the drawer is insufficient to cover it, he may nevertheless make deposits during business hours of the day in amount sufficient to pay it, in which case such funds, to the amount of the check, should be transferred to the account of the party presenting the check. If, however, at the close of banking hours on the day when the check is presented the account of the drawer is insufficient to pay it, the bank must then elect to either pay the check itself, charging the amount thereof to the account of the drawer as an overdraft, or return the check to the party presenting it as unpaid for want of funds."

In the case of Black Mountain Bank v. Kelly, the Court of Appeals of Kentucky, reported 280 S. W. 461, it was said:

"The rule is thoroughly settled that, when a check on itself is offered to a bank as a deposit, the bank has the

option to accept or reject it, or to receive it upon such conditions as may be agreed upon. Robinson & Son v. Bank of Pikeville, 146 Ky. 538, 142 S. W. 1065, 37 L. R. A. (N. S.) 1186; First National Bank v. Sidebottom, 147 Ky. 690, 145 S. W. 404; Patton v. Catlettsburg National Bank, 200 Ky. 775, 255 S. W. 690; 7 C. J. 642. It also is a well recognized rule that an entry in a pass book is not a written contract within the rule that parol evidence is inadmissible to vary its terms, but it is in the nature of a receipt, and is *prima facie* evidence that the amount credited was received by the bank and the entries may be explained or contradicted. 3 R. C. L. 531. The same rule is thus stated in Michie on Banks and Banking, p. 910, upon authorities there cited:

" 'Where there is an agreement that the credit may be charged off if the drawer of the check fails to pay the same, the bank may charge the credit to the payee's account.'

"As there was evidence to support appellant's contention that the check was accepted and credited upon appellee's pass book upon condition that same should be charged back if not paid by the drawer, and this was denied by the appellee, it is clear that the trial court erred in not submitting that question to the jury as asked by appellant, and in directing a verdict for appellee."

In the case of Commerce Trust & Savings Bank of Chicago v. Schuler, Sheriff, *et al.,* St. Louis Court of Appeals, Missouri, reported 27 S. W. (2nd Series) 492, it was said:

"Plaintiff bases its contention that the court should have directed a verdict in its favor upon the fact according to its view, that it authorized E. Kahn & Co. to deposit the two drafts as a cash item and permitted that company to draw upon the account, and that Kahn & Co. placed in its hands an invoice, and the order for delivery referred to in the statement of facts, that thereby it became the owner of the

drafts and entitled to the possession of the two cars of onions. In the case of Foristel v. Security National Bank, etc., 320 Mo. 442, 7 S. W. (2d) 997, 998, our Supreme Court said: 'The general rule is that when a customer of a bank endorses to it a draft or similar commercial paper and the bank gives the account of such customer credit for the face of the draft and unrestrictedly authorizes such customer to draw checks against such account (in the absence of a showing to the contrary) the title to such draft is transferred to the Bank as a matter of law and it is immaterial whether or not the customer thereafter exercises his right to check out the proceeds of such paper,' citing many cases.

"But our courts hold that the fact that a bank has credited a customer's account with the amount of a draft and permitted him to draw checks against it immediately and before collection is made would not create the relation of debtor and creditor between them, if there was an agreement that if collection was not made the amount of the draft should be charged back. Under such circumstances, says the court, 'the bank treats the depositor as merely provisional, and in case collection is not made the bank reserves the right to charge back the amount credited.' Midwest National Bank & Trust Co. v. Parker Corn Co., 211 Mo. App. loc. cit. 423, 245 S. W. 217, 220."

For the reasons herein stated, we must hold that the allegations of the special count of the declaration of which the certificates of deposit hereinbefore referred to were made a part by apt language, were insufficient to state a cause of action against the defendant and the demurrer thereto should have been sustained.

Pleas interposed by the defendant were sufficient to allege substantial matters of defense to the original declaration and the sustaining of demurrers thereto constituted error.

The judgment is reversed and the cause remanded for further proceedings.

WHITFIELD, TERRELL, BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., dissents.

ELLIS, C. J. (dissenting).—I think the amended declaration was good and the plea thereto insufficient to meet it.