## JACOBY et al.

v.

## CARROLLTON FEDERAL SAVINGS & LOAN ASS'N.

Court of Appeals of Kentucky.

Feb. 19, 1954.

See also, 246 S.W.2d 1000.

William G. Reed, Carrollton, for appellant.

Alfred W. Minish, Carrollton, J. Ballard Clark, Clark & Manby, LaGrange, for appellee.

MOREMEN, Judge.

Appellee, Carrollton Federal Savings & Loan Association, herein called bank, obtained a judgment against appellant, Raymond Jacoby, on a note executed by him. Real property covered by the mortgage securing the note was ordered sold to satisfy the note. From this judgment appellant prosecutes this appeal.

Appellant is a carpenter and building contractor of Carroll County. Appellee, as its name implies, is engaged in the business of lending money secured by mortgages on real estate. Mr. L. T. Griffith is the secretary of the company and is the principal actor on behalf of the bank in the transaction which resulted in this lawsuit. Mr. Virgil Sanders is not a party to this action but is important because his business operations were commingled with those of the parties'.

On August 26, 1947, Virgil Sanders, who owned certain lots, entered into a contract with Raymond Jacoby by which the latter agreed to build two houses on the property of the former for a sum not to exceed $5,400 for each house, and it was further agreed that Jacoby was to receive a sum equal to twenty per cent of the net profit derived from the sale of the two houses. The contract was signed by both parties and Griffith signed as a witness. Although this contract, which was in skeleton form, purportedly set a flat price for the houses, the parties understood that Mr. Sanders would furnish the money for materials and labor because he had, several days before, obtained from appellee a construction loan in the sum of $8,500 secured by a mortgage on his lots. Construction work was commenced and simultaneously the bank made advancements for labor and material. The number given by the bank to this loan was 313.

On October 16, 1947, appellant, Jacoby, who owned lots in the immediate vicinity of the Sanders property, also obtained a construction loan in the sum of $8,500 from the appellee bank and he, too, pledged the lots owned by him as security, but he did not immediately begin construction. Certain minor work was done in connection with the basement excavation and he purchased lumber, millwork and other materials which were stacked on his lots. These items cost approximately $3,700 and were charged against his account, which was numbered 329. Appellant admits a charge in that amount was proper.

The difficulty presented by this case arises from the fact that a major portion of the loan to Jacoby was used in the construction of the Sanders houses and on this point there is a direct contradiction between the parties. Appellee insists that Jacoby requested that his money be used under the expectation that it would be replaced when the Sanders houses were sold, while Jacoby testified that he did not make such an agreement and did not know that his funds were being applied to the payment of construction costs of the Sanders houses.

The procedure that the bank used is as follows: Account cards were set up by the bank and numbered. The ledger card of Virgil Sanders was filed in the record with cancelled checks that represented the various items of disbursement. This card shows a credit of $8,500, proceeds of the note executed by Sanders, and two further credits in the amounts of $2,000 and $130 resulting from cash deposits and the proceeds of a sale of certain bath fixtures. The card and the accompanying checks balance out and show that all of the money was expended. The ledger and checks also show that on the day the account was opened (August 23, 1947) various checks to defray financing costs were issued. The first checks, other than those defraying the expenses incidental to the loan, were followed by a check in payment of basement excavation. The first check made payable to Raymond Jacoby is marked for labor and is in the amount of $50. It was endorsed by him as were all the checks sub-

sequently issued in which he was named as payee. This batch of about twenty-two checks, totalling approximately $3,065.66, is made to Jacoby alone. There are other checks that name Jacoby as joint payee with others and these checks were definitely issued in payment for material and labor. The account card pertaining to the Jacoby loan is not in the record, but cancelled checks marked with the Jacoby number (329) have been presented and they show the date of issuance to be between October 16, 1947, and April 14, 1948, a period during which Jacoby was not working on his own construction, but on the houses belonging to Sanders. The money which Jacoby received, other than that which he expended for his own materials as mentioned above, was used in the construction of the Sanders houses. Griffith, secretary of the bank, and also the directors of the bank knew this money was being so applied.

After the completion of the Sanders houses, Jacoby requested money with which to complete the buildings on his own property and was told that the entire balance of his loan had been exhausted by advancements used in connection with the building of the Sanders houses. Thereafter, the bank brought suit on the promissory note which had been executed by appellant, sought judgment thereon and a decree that the property covered by the mortgage be sold and the proceeds applied to the payment of the note.

A trial before the chancellor resulted in a judgment against appellant for the entire amount of the loan, with interest, and sale of the land was ordered. On this appeal it is stated that the court committed three substantial errors in that (1) the evidence does not support the finding of the chancellor; (2) the demurrer to the third paragraph of the answer was improperly sustained; and (3) appellant's motion to transfer certain issues out of chancery for trial before a jury was improperly overruled.

A consideration of the complete record in this case leaves us with the troubled feeling that the entire facts of these transactions have not been disclosed because there is some indication, although we cannot point to any particular proof, that Jacoby, Sanders and Griffith might have been engaged in a joint venture with the hope that profit might be derived by all the parties. Even the bank is not above suspicion because it seemed to be interested to such an extent that it was willing to engage in rather strange banking practices in order to complete the project. However, the evidence presented to the trial court on this issue narrowed down to a statement on the part of Jacoby that he did not know that his money was being used, and a statement on the part of Griffith for the bank, that he did know it. In addition to the statement by Griffith, we must recognize and give weight to the fact that of the cancelled checks in the record, a great many were made to Jacoby and endorsed by him. Each of these checks bore the plain notation on the face of the instrument of the account from which it was drawn. A check drawn on the Sanders account was marked "V. P. Sanders L. No. 313," and a check drawn on appellant's account was marked "R. Jacoby L. No. 329." When we remember that Jacoby was a skilled carpenter and contractor who knew the amount of money that was being expended in the construction of the Sanders houses, we must also charge him with the knowledge that the money being paid to him greatly exceeded the total amount of the Sanders loan, and his bare statement that he did not know it is not satisfactory. We are of opinion that there is ample evidence in the record to support the finding of the chancellor.

In connection with appellant's second contention and in order to ascertain whether the trial court abused a sound discretion in refusing to transfer this case for the purposes of a trial by jury, it is necessary to outline chronologically the procedural steps that were taken.

July 22, 1949—Petition filed.

August 29, 1949—Answer filed admitting note and mortgage but denying all other allegations.

September 1, 1949—Motion to make answer more definite and certain.

November 11, 1949—Appellant took the deposition, to be read on his behalf, of L. T. Griffith.

November 23, 1949—Appellant tendered amended answer, counterclaim and setoff.

December 2, 1949, motion by appellee to require appellant to make third paragraph of answer and counterclaim more definite and certain.

December 7, 1949—Motion sustained.

Rule Day, January 1950—Appellant filed amended answer and counterclaim.

April 20, 1950—Motion to transfer to ordinary docket to be tried before a jury.

In connection with motions to transfer, in Keith v. Walker, 221 Ky. 741, 299 S.W. 730, 731, we said:

"Section 12 of the Code provides that, in an equitable action, either party may, by motion, have the case transferred to the ordinary docket for the trial of any issue concerning which he is entitled to a jury trial, but we have uniformly held that such a motion must be seasonably made, and a failure to make it within a reasonable time will be treated as a waiver of the right to demand a jury trial, and whether or not there has been an unreasonable delay in making the motion to transfer is a question to be decided by the trial court in the exercise of a sound discretion. Chenault v. Eastern Kentucky Timber & Lumber Co., 119 Ky. 170, 83 S.W. 552, 26 Ky.Law Rep. 1078; Blackburn v. Simpson, 144 Ky. [503] 505, 139 S.W. 758; Procter v. Tubb, 166 Ky. [676] 678, 179 S.W. 620; Board v. Dorris, 168 Ky. [195] 197, 181 S.W. 1098."

Section 10 of the Civil Code of Practice provides that the defendant by motion made when he answers may have an equitable action transferred to the ordinary docket. We have held that the motion must be seasonably made and that the question of a reasonable time is within the sound discretion of the chancellor. Sec. 10 of the Civil Code of Practice. Patton v. Catlettsburg National Bank, 200 Ky. 775, 255 S.W. 690; Strong v. Kentucky River Hardwood Co., 189 Ky. 529, 225 S.W. 358.

While we are not ready to agree that a mere denial of the receipt of money under a loan is such a common-law issue as requires a jury trial, we think it is apparent from the chronicle given above that considerable time elasped before the motion to transfer was made and the parties had apparently committed themselves to a trial by way of an equity court and we are unable to say that the trial court abused a sound discretion in refusing to transfer the case.

It is true that by means of a counterclaim in paragraph three of the amended answer and counterclaim, appellant sought damages in the sum of $5,000 as a result of the alleged failure of appellee to advance to him money which he claimed was still due under his construction loan and presumably such a failure would be of the nature of a suit for breach of contract properly tried as an ordinary action if the condition precedent is established that the contract was breached, but this theory is based on the supposition that appellant had not received the entire amount of his loan. The proof showed and the court held that he had. We, therefore, do not find it necessary to discuss whether loss of anticipated profits may be recovered for failure to lend or furnish money and whether the measure of recovery in such instances is only gauged by the excess amount of interest that the borrower is required to pay if he obtained additional money from someone else. See Clark v. Life & Casualty Insurance Co., 245 Ky. 579, 53 S.W.2d 968, 84 A.L.R. 1420; W. R. Craig & Co. v. Johnson, 225 Ky. 440, 9 S.W.2d 110.

We have found no prejudicial error in the record and the judgment is affirmed.